**Ignacio CUEVAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 68888.

Court of Criminal Appeals of Texas, En Banc.

Nov. 24, 1982.

Will Gray, court appointed, Houston, for appellant.

Mark Ward, Dist. Atty., Huntsville, John B. Holmes, Jr., Dist. Atty. & Patricia Saum & Bert Graham, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred

Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(4). After finding appellant guilty, the jury returned affirmative findings to the first two special issues under Art. 37.-071(b), V.A.C.C.P. Punishment was assessed at death.

Appellant was convicted of murdering Julia Standley by shooting her with a gun in the course of attempting to escape from the Texas Department of Corrections. A previous conviction and sentence of death in this cause were reversed by this Court due to error in the jury selection. *Cuevas v. State,* 575 S.W.2d 543.

In his sole ground of error, appellant contends that the trial court erred in excusing five jurors under V.T.C.A. Penal Code, Sec. 12.31(b), in violation of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581, and *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

In *Witherspoon,* the United States Supreme Court held, "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 522, 523, 88 S.Ct. at 1776, 1777.

The Court stated further that:

" . . . [N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt* . . . " 391 U.S. at 522, 523 n. 21, 88 S.Ct. at 1776, 1777 n. 21.

In *Adams,* the Supreme Court held that the State of Texas could not use V.T.C.A. Penal Code, Sec. 12.31(b), to exclude veniremen whose exclusion would not otherwise be valid under the doctrine set out in *Witherspoon.*

Sec. 12.31(b), supra, reads as follows: "Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. *A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.*" (Emphasis added).

In *Adams,* the Supreme Court discussed the manner in which Sec. 12.31(b), supra, had been improperly utilized:

"Based on our own examination of the record, we have concluded that § 12.31(b) was applied in this case to exclude prospective jurors on grounds impermissible under *Witherspoon* and related cases. As employed here, the touchstone of the inquiry under § 12.31(b) was not whether putative jurors could and would follow their instructions and answer the posited questions in the affirmative if they honestly believed the evidence warranted it beyond reasonable doubt. Rather, the touchstone was whether the fact that the imposition of the death penalty would follow automatically from affirmative answers to the question would have any effect at all on the jurors' performance of their duties. Such a test could, and did, exclude jurors who stated that they would be 'affected' by the possibility of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emotionally. Others were excluded only because they were unable positively to state whether or not their deliberations

would in any way be 'affected.' But neither nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty. The grounds for excluding these jurors were consequently insufficient under the Sixth and Fourteenth Amendments. Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law." 448 U.S. at 49, 50, 100 S.Ct. at 2528, 2529.

The *Adams* decision in effect overturned several of our cases holding that Sec. 12.-31(b), supra, could, independently of *Witherspoon,* be used to exclude prospective jurors as it had been used in *Adams.* See *Hughes v. State,* 563 S.W.2d 581, cert. denied, 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640; *Freeman v. State,* 556 S.W.2d 287, cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794; *Moore v. State,* 542 S.W.2d 664, cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266.

■ The voir dire of venireman Joseph A. Ward, Jr., a Professor of English at Rice University, took place on February 22, 1979, over a year before *Adams* was decided.

Ward initially told the court that he had conscientious scruples against the death penalty and that under no circumstances could he participate as a juror in returning a verdict that would require the court to assess the death penalty. The State challenged for cause.

The court continued to question Ward. After carefully explaining to Ward the bifurcated system in Texas for assessing guilt and punishment in capital murder cases, the court asked:

"Q. . . . .

"Now, you have expressed an objection to the death penalty. Would you feel that your conscientious objection to the death penalty as such, that it would affect your deliberation upon his guilt in the first instance or on either of the questions of fact, on those questions that I asked?

"A. No.

"Q. Well, now you have answered me two different ways.

"A. Maybe I misunderstood you.

"Q. I asked you at the outset whether you could participate as a juror in returning a verdict that would require the infliction of death as a punishment for crime.

"A. Oh, I see.

"Q. And you expressed an opinion that you could not.

"A. May I ask a question? You say it's the Court and not the jury that imposes the penalty, is that right?

"Q. That's right, but the Court is obligated to assess punishment based on the answers to those special issues . . . Would your attitude and your objection to that form of punishment interfere with the way you deliberated upon the facts of the case?

"A. No, it wouldn't.

"Q. You believe you can successfully set that aside and base your answers solely and exclusively upon the evidence you hear in the trial of the case?

"A. Yes, sir."

The court then allowed the State and appellant to question Ward, denying the State's challenge for cause.

During questioning by the State, Ward averred that, "There are numerous laws that I don't agree with, but I try to obey them and I accept the system of justice as it is." Later, Ward stated:

"A. . . . I didn't make the laws. I don't approve of that particular penalty, but I think I could make a discrimination between the two.

"Q. Between your conscience and what the Court told you to do or the legislature?

"A. That is correct."

On three more occasions, Ward was challenged for cause by the State and each time the challenge was specifically denied.

In the first such instance Ward stated that he did not see how the State could prove that a person would commit criminal acts of violence in the future. Art. 37.-071(b)(2), V.A.C.C.P.

Appellant posited a hypothetical involving a cold-blooded killing of girl scouts by a person who had already gone to prison four or five times for similar offenses:

"Q. . . . Under those circumstances, don't you think, if you believed all that beyond a reasonable doubt, you could conclude that there is a probability that he would commit future acts of violence?

"A. Yes.

"Q. So you could answer that question yes if the facts required it and warranted it, couldn't you?

"A. Yes."

The State's challenge was then overruled.

In the second instance, Ward initially had trouble understanding that a non-triggerman who did not intend for a murder to occur, but who anticipated it or should have anticipated it, could be assessed the death penalty.

Appellant explained to Ward that he was not *required* to answer the punishment questions affirmatively in the case of a non-triggerman and that he could consider mitigating circumstances such as lack of intent to kill. Ward stated that he could answer the punishment questions and consider any mitigating circumstances. At this point, the State's challenge was overruled.

In the third instance the State asked Ward:

"Q. So you are saying the fact that the death penalty is a possible punishment, that fact would influence you in your decision as to how you answer these two punishment questions, right?

"A. It probably would. Yes.

"Q. Could you say yes or no?

"A. Yes. Of course, it would certainly be in my mind, surely, it would influence me.

". . .

"A. . . . I would try to be as fair as possible, but I do have—

"Q. If you were that opposed to the death penalty, I could understand how it would affect you, and you just told me it would.

"A. Sure it would.

". . .

"MR. GRAHAM: Your Honor, we challenge under 1231."

Appellant was allowed to question Ward:

"Q. Mr. Ward, of course, anybody that's considering whether another individual lives or dies is going to be somewhat affected by that decision unless they are an executioner or something like that, don't you agree?

"A. Yes, I hope so.

"Q. Even though a juror feels that way, and I think it's proper that they should certainly be concerned about this life or death issue, but if you could answer yes to those questions if the State convinced you beyond a reasonable doubt that the answers should be yes, then you should serve and do your duty as a juror.

"A. That's right.

"Q. Can you do that?

"A. Yes.

"Q. So it would depend on the evidence that you heard?

"A. Yes.

"Q. And if you were convinced beyond a reasonable doubt, it wouldn't affect your feelings on the death penalty, you'd answer those questions yes or no and let the chips fall where they may?

"A. Yes.

"Q. Is that correct?

"A. That is true. It will be very unpleasant, but I will do it.

" . . .

"Questions by the Court:

"Q. Mr. Ward, could the State ever prove to you beyond a reasonable doubt that your answers should be yes to both questions?

"A. Surely.

"Q. You realize you have answered the lawyers' questions in an opposite manner?

"A. No, I haven't. The question was whether I would be influenced and the answer is certainly true.

" . . .

"A. I didn't say influence my verdict. I say influencing my feelings. I would have to be very strongly convinced of the guilt.

" . . .

"Q. So that if you are convinced beyond a reasonable doubt that the answer to both questions should be yes, after these other matters in the hypothet has been satisfied his guilt is proven, and you will answer then yes?

"A. Yes.

"THE COURT: Overrule the challenge."

Finally, the following colloquy between the State and Ward resulted in his exclusion:

"Q. Then that feeling, I assume, when you say that, it makes me feel like that your feeling against the death penalty would affect your deliberation how to answer those questions.

"A. Yes.

"Q. It would?

"A. Yes.

"Q. See, that's what to me any issue of fact means.

"A. I thought you meant the facts of the given case.

"Q. Not on the guilt or innocence. I'm talking about any issue of fact, meaning facts of whether or not you think this man is probably going to commit criminal acts in the future.

Those punishment questions. Do you follow me. Those are also facts that are involved in the case as well as the first part, when you are trying to decide whether he's guilty or not. So the fact you know death is a possible punishment, would that affect your deliberations on issue of fact in deciding the punishment question?

"A. Yes.

"Q. It would for sure?

"A. Yes.

"Q. If that's the case, I take it that you could not state under oath that the mandatory penalty of death would not affect your deliberations in the punishment part.

"A. Now, I understand what you are saying. I could not take that.

"Q. You couldn't take that oath?

"A. No. I couldn't do that.

"MR. GRAHAM: Your Honor, we challenge for cause under 12.31.

" . . .

"THE COURT: Challenge is sustained at this time."

The State contends that there was no *Adams* violation in the exclusion of Ward, because he "was not qualified under *Witherspoon ab initio*," and the trial court's

granting of the State's challenge was based on the entire voir dire.

Both arguments are without merit. Ward could not have been excluded consistently with *Witherspoon*. He repeatedly stated that he could follow the law and convict upon proper evidence of guilt beyond a reasonable doubt, despite his opposition to the death penalty.

Further, the trial court properly overruled the State's challenges four times. Only when Ward admitted that he could not take the oath because he would be "affected" by his views on capital punishment did the State successfully challenge him, and the challenge was based specifically on Art. 12.31, supra.

This exclusion of Ward was precisely the kind of exclusion forbidden by the Supreme Court in *Adams*. If even one juror is improperly excluded under the *Witherspoon* line of cases, the State cannot execute an appellant. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339.

The State asserts that appellant's ground of error is multifarious. We have no problem identifying and understanding appellant's point of objection. See Art. 40.09, Sec. 9, V.A.C.C.P.

The State additionally contends that appellant did not properly object to the exclusion of Ward. As noted earlier, at the time of this trial our case law made it abundantly clear that an objection to a Sec. 12.31(b) exclusion on *Witherspoon* grounds would be futile.

■ Where a defect of constitutional magnitude has not been established at the time of trial, the failure of counsel to object does not constitute waiver. *Ex parte Sanders*, 588 S.W.2d 383.

There are exceptions to this general rule, *Crawford v. State*, 617 S.W.2d 925, but this case is not one of them.

An examination of the voir dire shows that the State, appellant, and the trial court were fully aware of *Witherspoon* issues. Appellant made a sustained and vigorous effort to keep Ward from being excluded. Appellant objected to the successful exclusion of Ward on the grounds that, inter alia, "it would deprive this Defendant of a jury comprised of a fair cross-section of the citizens of this community, and we submit further that he's qualified by his answers." The error was preserved.

■ Unquestionably, at the time of trial, the court was correct in sustaining the State's challenge to prospective juror Ward under this Court's holding construing V.T.C.A. Penal Code, Sec. 12.31(b). The subsequent decision of the United States Supreme Court in *Adams* mandates that such action by the trial court constitutes reversible error.

When a *Witherspoon* type error has occurred, though the error is to penalty alone, the case must be reversed for an entirely new trial. *Evans v. State*, 614 S.W.2d 414. This Court is without authority to direct a new trial before a different jury on the issue of punishment only. *Ellison v. State*, 432 S.W.2d 955. See also Art. 44.24(b), V.A.C.C.P.

The judgment is reversed and the cause is remanded.