**Ex parte James RATHMELL.**

**No. 13–83–407–CR.**

Court of Appeals of Texas, Corpus Christi.

Sept. 16, 1983.

Nathniel G. Rhodes, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before UTTER, KENNEDY and GON-ZALEZ, JJ.

OPINION

UTTER, Justice.

This is an appeal from an order of the district court which denied habeas corpus relief. Appellant sought to have an indictment for involuntary manslaughter dismissed with prejudice. He reasoned that proceeding to trial under the indictment would expose him to jeopardy a second time. *Ex Parte Robinson,* 641 S.W.2d 552 (Tex.Cr.App.1982).

At the habeas corpus hearing the State and appellant agreed to stipulate facts. Appellant, driving while intoxicated, struck an automobile carrying Devary Durrill and Bonnie Watkins. Both girls died as a result of the collision. Appellant was separately indicted for the involuntary manslaughter of both girls under TEX.PENAL CODE ANN. (Vernon 1974) Sec. 19.05(a)(2). He was convicted of the involuntary manslaughter of Bonnie Watkins; punishment was assessed by the jury at two years confinement in the Texas Department of Corrections. *Rathmell v. State,* 653 S.W.2d 498, (Tex.App.—Corpus Christi 1983, pet. refused). The State is now proceeding to trial on the indictment alleging the involuntary manslaughter of Devary Durrill.

Appellant argued in the trial court that the second indictment should be dismissed on double jeopardy grounds because there was one automobile accident, and therefore only one offense.

Before we address the merits of appellant's claim, we address whether habeas corpus is the proper remedy to pursue this matter. *Ex Parte Robinson,* 641 S.W.2d 552 (Tex.Cr.App.1982) and *Spradling v. State,* 634 S.W.2d 89 (Tex.App.—Beaumont, no d.r.) indicate to us that habeas corpus is the proper procedure to challenge one of the incidents of double jeopardy exposure. The State, in its brief, argues that habeas corpus is not the proper remedy, citing *Ex Parte Ruby,* 403 S.W.2d 129 (Tex.Cr.App. 1966). We have considered *Ruby* and find that the case has no application to the factual situation before us. In *Ruby,* it ap-

pears that petitioner sought habeas corpus apparently to force a hearing on his sanity at the present time. The Court noted that the writ of habeas corpus is not available to secure a judicial determination of any question, which, even if determined in the prisoner's favor, could not result in his discharge. That is not the situation here, where appellant, while legally restrained as a result of his involuntary manslaughter conviction, is also restrained under a pending indictment for the involuntary manslaughter of Devary Durrill. Appellant's presence at trial is compelled as a result of the indictment. Art. 11.22 TEX.CODE CRIM.PRO.ANN. (Vernon 1979) speaks of the restraint in terms of the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right.

The issue of whether or not habeas corpus is a proper remedy must turn on the issue of whether or not defendant suffers any restraint as a result of his impending trial. It is axiomatic that when one is indicted and forced to trial his liberty is restrained. First, defendant is subject to restraint "not shared by the public generally." *Jones v. Cunningham,* 371 U.S. 236, 240, 83 S.Ct. 373, 375, 9 L.Ed.2d 285. Defendant cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moments notice. Disobedience is itself a criminal offense. *Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County,* 411 U.S. 345, 350, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294. Defendant has no alternative to appear in open court and answer the charges brought forth by the indictment. Therefore, he is restrained in his liberty by said indictment to the extent that the habeas corpus would be the proper remedy to remove this restraint.

While the rhetoric celebrating habeas corpus has changed little over the centuries it is nevertheless true that the function of the writ has undergone dramatic change. Recent decisions by United States Supreme Court have demonstrated that habeas corpus is not a "static narrow formalistic remedy." *Jones,* 371 U.S. at 243, 83 S.Ct. at 377. The writ is one which must retain the "ability to cut through barriors of form and procedural mazes." *Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969); See *Frank v. Mangum,* 237 U.S. 309, 346, 35 S.Ct. 582, 594, 59 L.Ed. 969 (1950). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are suffered and corrected." *Harris,* 394 U.S. at 291, 89 S.Ct. at 1086. The use of the writ of habeas corpus should not be suffocated by stifling formalities or hobbled in its effectiveness with "the manical of arcane and scholastic procedural requirements." *Hensley,* 411 U.S. at 350, 93 S.Ct. at 1574. Defendant's restraint was not a speculative possibility but a harsh reality. Therefore, he was "in custody" so as to suffer a restraint subject to relief by habeas corpus. *Hensley,* 411 U.S. at 351–352, 93 S.Ct. at 1574–1575. We therefore hold that habeas corpus is a proper remedy.

Appellant in his sole ground of error contends that the second indictment should be dismissed on double jeopardy grounds because there was one automobile accident and, therefore, only one offense. We are thus squarely faced with one issue on this appeal: Can appellant be twice put to trial for involuntary manslaughter where he has committed only one culpable act?

Prior to the abolition of the carving doctrine in *Ex Parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1980), the State was required to carve only one offense from a criminal episode. The elimination of the carving rule's applicability to the present situation demands that we answer heretofore unconsidered questions.

*Ex Parte McWilliams* indicated that double jeopardy questions in Texas would now be decided under the strict construction of the Constitutions of the United States and Texas. 634 S.W.2d at 824. The test to be applied is that of *Blockburger v. United*

*States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> "(T)he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Unfortunately, the Blockburger rule has no applicability to the double jeopardy issue raised in this case.[1] Appellant's intoxicated driving, which by mistake or accident resulted in the deaths of two individuals, does not violate two distinct statutory provisions. Appellant's conduct violates one distinct statutory act. The question is whether this one act violated the statutory provision twice, or only once. Unlike the situation presented in *Ex Parte McWilliams,* where more than one criminal act was committed in a continuous assaultive transaction, appellant committed only one criminal act. There was a single deadly accident or mistake.

Because we are reluctant to rely on law established prior to the abandonment of the carving doctrine, and because so little authority exists since its demise, we have looked for guidance at the law of other jurisdictions. We have found a split in authority.

In *Thessen v. State,* 508 P.2d 1192 (Alaska 1973), the defendant was charged with 14 counts of murder, all stemming from a single act of arson. The jury, in convicting the defendant of 14 counts of manslaughter, indicated that the defendant had not intentionally killed anyone, although he did intent to commit the crime of arson. The Alaska Court held that where "there has been but one statute violated by a single act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments."

1. For a thought-provoking discussion of Blockburger, see: *Baker v. State,* 425 So.2d 36 (Fla.

In *State v. Irvin,* 603 S.W.2d 121 (Tenn. 1980), the Supreme Court of Tennessee overruled a line of authority and aligned itself with "the majority view" that multiple convictions for homicide may stand where more than one death results from one automobile accident.

Missouri law likewise holds that there are as many separate or distinct offenses as there are persons injured or killed in the unlawful operation of a motor vehicle. *DeLoch v. State,* 588 S.W.2d 243 (Mo.App. 1979); *State v. Whitley,* 382 S.W.2d 665 (Mo.1964).

Consistent with this view is the rule in Oklahoma that where different persons are victims of the same unlawful act, former jeopardy does not arise. *Gibson v. State,* 512 P.2d 1399 (Okl.Cr.App.1973).

Several courts have explicitly stated that whether one act can give rise to multiple offenses is a question of statutory interpretation. The Supreme Court of Wisconsin, for example, recently held that multiple counts of homicide by intoxicated use of a motor vehicle were not multiplicitous. In reaching its result, the court reasoned that each separate count required proof of an additional fact which the other counts did not, and that the legislative intent was "to allow prosecution of separate offenses for every death caused." *State v. Rabe,* 96 Wis.2d 48, 291 N.W.2d 809, 820 (1980).

The Supreme Court of West Virginia, applying an analysis similar to that used by the Wisconsin Court in Rabe, reached an opposite result. *Myers v. Murensky,* 245 S.E.2d 920 (W.Va.1978). The Court noted that a penal statute must be construed against the State and in favor of the defendant where legislative intent is not clearly expressed.

■ Although the above cases do not represent an exhaustive study, it is clear from these cases that it is a question of state law as to whether one act can legitimately support multiple offenses. If there are two

App.—5th Dist.1983) (Cowart, J. Dissenting).

offenses under state law then there is no former jeopardy problem.

■ Before considering the jeopardy implications of a statute a court must first have determined that there was legislative intent to permit or impose a possible double punishment. *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Ex Parte McAtee,* 586 S.W.2d 548 (Tex.Cr. App.1979).

We now focus on Texas. Sec. 19.05 TEX. PENAL CODE ANN. (Vernon 1974) provides:

(a) A person commits an offense if he:
(1) recklessly causes the death of an individual; or
(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.

Neither this section, nor any other section of the Penal Code reveals any legislative intent with regard to whether one can be criminally liable for two offenses for the commission of one act. Although there is language in *Ex Parte McWilliams* that it appears the legislature intended to "allow prosecutions for each offense occurring within one criminal transaction," that language has no applicability where appellant's criminal liability arises from one distinct act and not from a series of acts within a transaction.

The Supreme Court of the United States stated that the power to define offenses lies in the legislature:

"(O)nce Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution' that prescription determines the scope of protection or acquittal."

*Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

■ We are not convinced that the legislature intended to allow multiple prosecutions for the results of one act. In fact, given the law at the time of the Penal Code's enactment, wherein the carving doctrine was viable, it is not clear that the legislature even considered the issue.

Without a clear indication from the legislature that it intended to subject a person to multiple criminal liability for conduct and events which are identical, we are not able to find that appellant should now be required to defend himself twice for the same conduct.

As noted above, when the legislature formulated the existing penal code the restrictions of the carving doctrine generally would have prohibited the multiple prosecution of offenses resulting from one act. *Quitzow v. State,* 1 Tex.App. 47 (Ct.App. 1876). We cannot find that the "allowable unit of prosecution" under Sec. 19.05 encompasses prosecution twice for the same conduct.

■ Contrary to the rule espoused in *Myers v. Murensky,* supra, and *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) that any ambiguity in whether an act gives rise to two offenses should be resolved in favor of the defendant the Texas Penal Code specifically provides in Sec. 1.05 that the "rule that a penal statute is to be strictly construed does not apply to this code." In spite of this language, it is inconceivable that this broad language was intended by the legislature to allow the creation of offenses where the Code lacks adequate clarity.

■ As noted in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) the legislature remains free under the Double Jeopardy Clause to define crimes and fix punishment; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

■ Further, the principle of double jeopardy is not merely a protection against multiple prosecutions. It is a protection against multiple punishment. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In this case, the jury which assessed the punishment in appellant's first conviction knew all the circumstances surrounding the deaths of Bonnie Watkins and Devary Durrill. Durrill's death was a fac-

tor which the sentencer was free to consider in setting punishment. Were appellant once again forced to trial, and convicted, he would be subjected to a sentencer free to consider the fact that his conduct caused the death of two individuals. Under the circumstances appellant runs the risk of being twice sentenced for "each" offense rather than being sentenced once for each offense. This is different from the case in which a person commits a series of distinct crimes in a criminal episode, and the sentencer, in assessing punishment, knows the entire context in which individual distinct offenses occurred within the one transaction. Here, appellant is not being twice punished for multiple distinct acts, but, if convicted, would be again punished for the exact same singular act.

The penalties prescribed by the legislature for involuntary manslaughter are flexible. The mere existence of indeterminate sentencing shows that the legislature intended that punishment could be assessed to fit the crime without resort to multiple prosecutions. Appellant has once been placed in jeopardy for his conduct. The judgment of the trial court is reversed, and the indictment dismissed.

KENNEDY, J., dissents in part and concurs in part.

KENNEDY, Justice, dissenting and concurring.

I respectfully dissent from the holding of the majority that Habeas Corpus is a proper vehicle for conferring jurisdiction of this matter upon the Court of Appeals where the cause has not yet been tried and resolved in the trial court. I base this reasoning upon *Ex Parte Ruby,* 403 S.W.2d 129 (Tex.Cr.App.1966) wherein the court of Criminal Appeals held:

"The writ of habeas corpus is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not result in his immediate discharge."

The same fact situation is presented here since even if petitioner is released from prosecution below in this cause he will remain in custody because of his conviction in the companion cause.

I read *Ruby,* supra in its most narrow terms to define "immediate discharge" to mean total freedom from all restraint. Apparently the majority construes "immediate discharge" to mean something less.

*Ex Parte Ruby,* supra has not been overruled to this day. If it is to be overruled, or its plain language softened, then this should be done by the Court of Criminal Appeals and not by an intermediate level court.

I would deny the petitioner leave to be heard on the writ and leave him to the normal appeal process if he is convicted below. However, this Court having decided to consider this matter on its merits, I now join the majority in holding that a second trial for the one act committed would constitute double jeopardy.