Frank JANUARY, Appellant,

v.

STATE of Texas, Appellee.

No. 13–83–549–CR.

Court of Appeals of Texas,
Corpus Christi.

May 30, 1985.

Joseph A. Connors, III, McAllen, for appellant.

Theodore C. Hake, Dist. Attorney's Office, Edinburg, for appellee.

Before UTTER, KENNEDY and KEITH [1], JJ.

## OPINION

UTTER, Justice.

On January 26, 1983, appellant kidnapped Luis Reyes and shot him several times. On June 8, 1983, the Hidalgo County Grand Jury indicted appellant for aggravated kidnapping in Cause No. CR–550–83–D and for attempted capital murder in Cause No. CR–556–83–D.

On July 18, 1983, appellant's motion to consolidate the two causes was denied; and, in a jury trial following a plea of not guilty, appellant was convicted for aggravated kidnapping and was sentenced to 90 years in the Texas Department of Corrections.[2]

Four months after the trial for aggravated kidnapping, appellant pled not guilty to the charge of attempted capital murder and was tried before a jury. The evidence presented at this second trial was effectively identical to the evidence presented at the aggravated kidnapping trial, which had been held before the same trial judge. The jury found appellant guilty and assessed his punishment at 50 years in the Texas Department of Corrections. Appellant gave notice of appeal; it is this conviction for attempted capital murder which is currently before this Court for review.

In his first ground of error, appellant contends that the attempted capital murder conviction violates his federal and state constitutional and statutory rights against double jeopardy for the same offense. A review of the procedural history and the

---

1. Associate Justice (Ret.), Court of Appeals, Ninth Supreme Judicial District, sitting by designation. *See* TEX.REV.CIV.STAT.ANN. art. 1812 (Vernon Supp.1985).

2. Appellant appealed, and this Court affirmed the conviction in *January v. State*, 678 S.W.2d 243 (Tex.App.—Corpus Christi 1984, pet. ref'd).

evidence of this case as well as the applicable penal provisions is necessary.

The evidence shows that, on January 26, 1983, Luis Reyes was leaving work when he was approached by a man seeking a ride to a gasoline station in McAllen. Reyes agreed to take this man, whom he identified as appellant, to the gas station. When they arrived at the gas station, appellant, instead of departing, asked Reyes to drive him to Mission. Reyes refused, and appellant drew a gun and forced Reyes to continue to drive. They eventually concluded their drive near a rural canal, where Reyes attempted to escape. The escape was unsuccessful, and appellant threatened to kill Reyes. Ultimately, Reyes ignored the warning and again tried to escape. This time, appellant fired several shots which struck Reyes, who fell to the ground and feigned death until he later heard appellant apparently attempting to reload the gun. Reyes then got up and ran towards a paved road from where a passing motorist took him to a hospital. The evidence showed that Reyes sustained five gunshot wounds.

For this criminal activity, appellant was indicted for aggravated kidnapping under TEX.PENAL CODE ANN. § 20.04(a)(5) (Vernon Supp.1985). The indictment charged that appellant:

> "... did then and there intentionally and knowingly abduct Luis Reyes with intent to terrorize the said Luis Reyes..."

Appellant was also indicted for attempted capital murder under TEX.PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.1985). That indictment charged that appellant,

> "... did then and there while in the course of committing and attempting to commit the kidnapping of Luis Reyes, the said (appellant) did then and there intentionally and knowingly with the specific intent to commit the offense of murder attempt to cause the death of an individual, namely, Luis Reyes by shoot-

ing him with a gun, said attempt amounting to more than mere preparation that tends but fails to effect the commission of the offense intended..."

Prior to the first trial, the appellant filed a motion to consolidate the two causes. The State opposed the motion, and the trial court denied the consolidation.[3]

The record does not show that appellant made any effort to raise the double jeopardy issue by filing an application for writ of habeas corpus to ultimately secure a pretrial appellate review of his double jeopardy claim, even though numerous courts of this State have allowed such pre-trial review. *See Ex parte Robinson,* 641 S.W.2d 552 (Tex.Crim.App.1982); *Ex parte Maldonado,* 681 S.W.2d 86 (Tex.App.—Amarillo 1984, pet. ref'd.); *Bustos v. State,* 675 S.W.2d 811 (Tex.App.—El Paso 1984, no pet.); *Ex parte Padgett,* 673 S.W.2d 303 (Tex.App.—Dallas 1984, pet. granted); *Ex parte Loffland,* 670 S.W.2d 390 (Tex.App.—Fort Worth 1984, pet. ref'd.); *Ex parte Gonzales,* 667 S.W.2d 932 (Tex.App.—Austin 1984, pet. ref'd.); *Ex parte Rathmell,* 664 S.W.2d 386 (Tex.App.—Corpus Christi, pet. granted). Also, the record does not show that appellant made any effort to secure a pre-trial ruling from the trial court concerning his double jeopardy claim before trial.

However, the record does show that, during the initial phase of voir dire examination, the trial court first raised the possibility of double jeopardy when it informed the jury that, if the defendant filed a special plea of double jeopardy, the jury might be required to make some factual determinations regarding double jeopardy. At that time, defense counsel interrupted the trial court and requested that the trial court make no ruling at that time upon his motion to dismiss the case on double jeopardy grounds, which had earlier been filed in the cause.[4] Thereafter, the trial court

---

**3.** The transcript does not show a written order denying appellant's motion. Appellant, however, has included in the record a statement of facts of the hearing on the motion to consolidate wherein the trial court orally denied his motion.

**4.** The motion is contained in the record as Defense Exhibit No. 17. The transcript does not contain a copy of the motion.

and counsel discussed appellant's right to "appeal" an adverse ruling under *Ex Parte Robinson*.[5] The trial court made no ruling on the double jeopardy motion. Thereafter, the trial proceeded, and the State presented its evidence. Appellant did not raise the double jeopardy issue until the beginning of his case-in-chief. He then attempted to introduce before the jury various pleadings and the statement of facts from the prior aggravated kidnapping trial. The trial court refused to allow the jury to consider these documents but then recessed the jury and permitted appellant to present the evidence to the court.

On appeal, appellant now vigorously argues that the State violated his rights against double jeopardy. Appellant argues that, considering "the fundamental nature of jeopardy pleas, jeopardy can be raised for the first time by way of appeal."[6] Although the State concedes that appellant may raise a double jeopardy claim for the first time on appeal, we deem it appropriate to discuss whether appellant waived his right to assert a double jeopardy claim as a result of his active acquiescence to the second trial while by-passing pre-trial appellate review of a colorably meritorious double jeopardy claim.

The issue regarding the preservation of double jeopardy claims was discussed by the Austin Court of Appeals in *Allen v. State*, 656 S.W.2d 592 (Tex.App.—Austin 1983, no pet.):

> Initially, the State argues that by failing to file a special plea of former jeopardy in accordance with Tex.Code Cr.P. Ann. arts. 27.02 and 27.05, appellant waived his right to complain on appeal. The question of former jeopardy has been held to be fundamental in nature and capable of being raised for the first time on appeal. *Jones v. State*, 586

S.W.2d 542, 544 (Tex.Cr.App.1979); *Muncy v. State*, 505 S.W.2d 925 (Tex.Cr.App. 1974). Other cases hold that a plea of former jeopardy is unnecessary when the second trial is pursuant to an indictment arising out of the same transaction, provided that the second trial is in the same court, is before the same judge, as in the instant case. *Duckett v. State*, 454 S.W.2d 755, 758 (Tex.Cr.App.1970); see *Ex parte Myers*, 618 S.W.2d 365, 367 (Tex.Cr.App.1981); see also *Ex parte Scelles*, 511 S.W.2d 300 n. 3 (Tex.Cr.App. 1974) (Correcting misleading language in *Duckett v. State*, supra). The State's waiver argument is without merit and we will examine appellant's claim of double jeopardy.

*Id.*, 656 S.W.2d at 594.

The rules mentioned by the Austin Court of Appeals were effective before the United States Supreme Court subsequently held that an accused had a right to an appellate review of double jeopardy matters prior to trial. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). While this right to pre-trial review may have been based initially on the construction of a federal statute, the Supreme Court has unmistakably held since *Abney* that the accused's right to pre-trial appellate review of a double jeopardy claim is grounded on the United States Constitution's Fifth Amendment. For example, in *United States v. Hollywood Motor Car Company, Inc.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), the Supreme Court stated:

> "In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), we permitted interlocutory appeal of an order denying a pretrial motion to dismiss an indictment on double jeopardy

---

**5.** Technically, no "appeal" may be taken from the trial court's pre-trial adverse ruling on a double jeopardy claim. *Spradling v. State*, 634 S.W.2d 89 (Tex.App.—Beaumont 1982, no pet.).

**6.** While that language has appeared in some cases, the United States Supreme Court has noted that a double jeopardy claim may be waived. *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241,

fn. 2, 46 L.Ed.2d 195 (1975). Moreover, in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the United States Supreme Court held that the petitioner's own actions deprived him of any right he might have had against consecutive trials where the accused had been granted separate trials at his own request.

grounds. Perhaps most important among the relevant factors, we recognized that 'the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.' Id., at 660, 97 S.Ct. at 2040. One right guaranteed by the Double Jeopardy Clause was the right not to be tried twice for the same offense. '[I]f a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.' "

Id., 102 S.Ct. at 3083.

Since the Double Jeopardy Clause protects an accused from being twice put to trial for the same offense, the Supreme Court reasoned that, if an accused had to wait until an appeal from a conviction to challenge the constitutionality of the proceeding, then the intended protection would be defeated by the trial, and the claim would be effectively unreviewable on appeal.

■ It seems somewhat incongruous to us that appellant is able to assert the double jeopardy claim now when he failed to present it at a time when his rights could have been fully protected. Nonetheless, we conclude that appellant is entitled to a review of the merits of his double jeopardy claim despite his decision to proceed to trial when he was fully aware that a pre-trial remedy was available to resolve a fundamental constitutional question.

■ Texas law, as it now exists, allows the assertion of a double jeopardy claim for the first time on appeal.[7] Whether this procedure should be altered in light of Abney and Hollywood Motor Car with respect to double jeopardy claims arising out of multiple prosecutions is not a deci-

sion for an intermediate appellate court. We therefore address the merits of the double jeopardy claim raised by appellant.

■ At the outset, it is necessary for us to point out that the United States Supreme Court has specifically noted three separate guarantees arising from the Fifth Amendment Double Jeopardy Clause. It:

(1) protects against a second prosecution for the same offense after acquittal,

(2) protects against a second prosecution for the same offense after conviction and

(3) protects against multiple punishments for the same offense.

Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

Each of these guarantees affords an accused a separate constitutional protection, and each protection requires a court to focus on different factors in determining the extent of the constitutional protection. For example, the collateral estoppel doctrine owes its existence to the first guarantee of double jeopardy protection (which protects against a second prosecution for the same offense after acquittal) and requires a reviewing court to determine what issues were resolved favorably to the accused in a former trial, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), while the third guarantee of double jeopardy protection (which protects against multiple punishments for the same offense) requires a court to review the statutory elements of two offenses when they are alleged to be "the same." Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The second guarantee of double jeopardy protection (which protects against a second prosecution for the same offense after conviction) has proven quite difficult to effectuate and, as noted below, has confused courts trying to define the parameters of the constitutional protec-

---

7. In Cuevas v. State, 641 S.W.2d 558 (Tex.Crim. App.1982), the Court of Criminal Appeals held that, where a defect of constitutional magnitude has not been established at the time of trial, failure to object does not constitute waiver. However, we hold that the rule of Cuevas is not applicable here because the pending indictment for attempted capital murder placed a restraint on appellant prior to trial that could have been removed through an original habeas corpus proceeding. See Rathmell v. State, 664 S.W.2d 386, (Tex.App.—Corpus Christi 1984, pet. pending).

tion. The present case involves this second guarantee of double jeopardy protection.

We begin our analysis of the present case by setting forth the standards articulated by the United States Supreme Court and the Court of Criminal Appeals and then apply what we perceive to be the appropriate principles of law.

In *Ex Parte McWilliams,* 634 S.W.2d 815 (Tex.Crim.App.1982), the Court of Criminal Appeals held that double jeopardy questions in Texas would be decided under the "strict construction of the Constitutions of the United States and of this State." On the same day that *Ex Parte McWilliams* was decided, the Court of Criminal Appeals in *Ex Parte Mike,* 632 S.W.2d 594 (Tex. Crim.App.1982), held that "we will determine the double jeopardy implication of *successive prosecutions* by applying the offense defining test set forth by the Supreme Court in *Blockburger*" (emphasis supplied):

> "[T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether these are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

The Supreme Court in an attempt to clarify its decision in *Blockburger* as applicable to the third guarantee stated that, in determining whether each statutory offense requires the proof of a fact that the other does not, it is the separate statutory elements of each offense, rather than the actual evidence to be presented at trial, which must be examined. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

■ Application of the *Blockburger* test to the two convictions suffered by appellant would afford him no relief; each statute requires proof of a fact which the other does not. Under the indictment for which appellant was convicted for aggravated kidnapping, the State was required to prove an intent to terrorize. Under the indictment for which appellant was convicted for attempted murder, the State was required to prove an intent to kill. Undoubtedly, one can intend to kill without intending to terrorize; and, conversely, one can intend to terrorize without intending to kill. By application of the *Blockburger* test, appellant was not placed in double jeopardy for the same offense.

However, our review of various cases dealing with the second guarantee of double jeopardy protection convinces us that, while the *Blockburger* test may be applicable, it is not definitive, for the Supreme Court has held that the *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. In *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221 at 2226, 53 L.Ed.2d 187 (1977), the Supreme Court noted that, in both *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), a strict application of the *Blockburger* test would have permitted imposition of consecutive sentences had the charges been consolidated into a single proceeding. Nonetheless, the Supreme Court found double jeopardy violations and held that the separate offenses were the "same" for purposes of protecting the accused against multiple prosecutions (as opposed to multiple punishments arising from a single proceeding). In fact, the Supreme Court stated that *"separate statutory crimes need not be identical—either in constituent element nor in actual proof—in order to be the same within the meaning of the constitutional prohibition." Brown v. Ohio,* 432 U.S. at 164, 97 S.Ct. at 2224. (Emphasis supplied.) *Brown v. Ohio* thus makes it clear that the *Blockburger* test only begins a double jeopardy analysis and that the *Blockburger* test may well be inapplicable with regard to certain guarantees of double jeopardy protection.[8]

---

8. The issue is further clarified in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) where the Supreme Court makes it clear that the *Blockburger* test is a method for determining the construction of Congressional legislation and was not intended to be applied

In *In re Nielsen*, the Supreme Court made the following comment regarding the "extended" protection afforded by the second guarantee of double jeopardy protection which is not encompassed by *Blockburger*:

> "[A] person [who] has been tried and convicted for a crime which has various incidents included in it ... cannot be a second time tried for one of the incidents without being twice put in jeopardy for the same offense."

*Id.*, 131 U.S. at 188, 9 S.Ct. at 676.

The Supreme Court further elaborated on this principle in *Brown v. Ohio*, wherein the Court stated:

> "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."

*Id.*, 452 U.S. at 167 n. 6, 97 S.Ct. at 2226 n. 6.

Given the Supreme Court's holding in *In re Nielsen* and *Ashe v. Swenson*, along with the above marginal note in *Brown v. Ohio*, the term "same offense" as used in relation to the second guarantee of double jeopardy protection cannot be determined by applying the meaning of the term "same offense" as used in relation to the third guarantee of double jeopardy protection. If two statutory offenses are "the same" under the *Blockburger* test, the two offenses would be "the same" when applied to the second guarantee of double jeopardy protection. *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). However, the converse is not true; and, when two offenses are not "the same"

under the *Blockburger* test, they may be "the same" or be deemed "the same" under application of *In re Nielsen*. It thus appears that, where *Blockburger* focuses upon the statutory elements of the two offenses, *In re Nielsen* and *Brown v. Ohio* focus upon the factual issues already resolved by the first trial. Obviously cases involving the second guarantee of double jeopardy protection require a different analysis than those involving the third guarantee of double jeopardy protection.

We have failed to find any authority which clearly and articulately sets forth a universal standard to resolve this type of double jeopardy problem. In fact, the authority we have found better documents the confusion and inconsistency in this area of the law than resolves it. *See* Justice Rehnquist's dissenting opinion, with Chief Justice Burger joining, in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The confusion has been so great that Michigan has abandoned the *Blockburger* test, noting that it is not a principle of constitutional law, and has returned to its "traditional" approach to double jeopardy problems. *People v. Robideau*, 419 Mich. 458, 355 N.W.2d 592 (1984).

In keeping with what the United States Supreme Court has stated in post-*Ex parte McWilliams* cases, we find it inadvisable to draw analogies between double jeopardy cases involving multiple prosecutions and those involving multiple punishments; although, we recognize that *Blockburger*, which actually deals with the third guarantee of double jeopardy protection (which protects against multiple punishments for the same offense), has been applied to cases involving the second guarantee of double jeopardy protection (which protects against a second prosecution for the same offense after conviction).

---

by state courts in construing the acts of state legislatures. The Supreme Court has stated: "Where as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger*,

a court's task of statutory construction is at an end and the prosecutor may impose cumulative punishment under such statutes in a single trial." *See Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

Appellant directs our attention to a case virtually on point. In *Jarvis v. Knowlton*, 459 F.Supp. 687 (N.D.Tex.1978), *rev'd*, 620 F.2d 298 (5th Cir.1980) the defendant Jarvis had been convicted on two counts of aggravated kidnapping for an incident in which he had kidnapped and sexually assaulted two young boys. Also pending against Jarvis were two indictments for attempted capital murder based on the same incident. Jarvis sought to enjoin the state court proceeding which he claimed would attempt to convict him a second time for the same offense. The federal district court, finding that convictions of aggravated kidnapping and attempted capital murder would not violate the "same offense" standard of the *Blockburger* test, nonetheless found that the Double Jeopardy Clause was violated and enjoined the state court from proceeding on the attempted capital murder indictments. The federal district court reasoned that, in order to obtain convictions for aggravated kidnapping and attempted capital murder, the prosecutor "must twice prove the elements of kidnapping." Citing *Johnson v. Estelle*, 506 F.2d 347 (5th Cir.1975), the federal district court warned that the Double Jeopardy Clause should not fall victim to the manipulation by prosecutors of modern penal codes which spin out "multitudinous criminal charges ... from the same incident." The federal district court was reversed by the Fifth Circuit Court of Appeals in an unpublished opinion on a procedural ground unrelated to the merits of the double jeopardy issue.

■■ While we do not agree with all of the reasoning of the federal district court, we find that it reached the correct result by applying the following well established general principles of the Double Jeopardy Clause:

> "As we have explained on numerous occasions, the bar to retrial following acquittal or conviction ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence."

*Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

By creatively choosing which elements it hoped to prove by the same evidence, the State was able to convict appellant for two aggravated offenses in two prosecutions, wherein the aggravating element for each offense was the other offense. Had appellant been convicted for attempted murder and kidnapping, instead of attempted capital murder and aggravated kidnapping, our consideration might have been different, but we need not address at this time whether those offenses should be tried in one prosecution.

■■ We find that the second trial for aggravated kidnapping violated appellant's rights against double jeopardy. Appellant's first ground of error is sustained.

■■ In his twelfth and thirteenth grounds of error, appellant challenges the sufficiency of the evidence to sustain the conviction. We have reviewed the evidence and find it sufficient. These grounds of error are overruled. However, because we have sustained appellant's first ground of error, we do not address the issues raised in grounds of error two through eleven and fourteen through twenty-six.

The judgment of the trial court is REVERSED, and the indictment is ordered DISMISSED.

Opinion published.