**Ex parte William HERRON, Jr.**

**No. 70028.**

Court of Criminal Appeals of Texas, En Banc.

May 23, 1990.

William Herron, Jr., pro se.

John B. Holmes, Jr., Dist. Atty. & Calvin A. Hartmann, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Presiding Judge.

This is a post-conviction application for writ of habeas corpus before this Court pursuant to Article 11.07, V.A.C.C.P.

Applicant, William Herron, Jr., was indicted for aggravated kidnapping. That indictment, in pertinent part, provides that:

"[Applicant] ... on or about December 23, 1983 ... intentionally and knowingly restrain ERMA JEAN TUMER, hereafter styled the Complainant, by using and threatening to use deadly force with intent to prevent the liberation of the Complainant, and with intent to facilitate commission of the felony of Robbery."

Applicant was separately indicted for aggravated robbery. That indictment alleges that:

"[Applicant] ... on or about December 23, 1983, ... while in the course of committing theft of property owned by ERMA JEAN TUMER, hereafter styled the Complainant, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place the Complainant in fear of imminent bodily injury and death, by using

and exhibiting a deadly weapon, namely, a firearm."

Prosecution on the two indictments was had in a single trial before the same jury. The jury convicted applicant for both crimes. The trial court assessed a sentence of twenty years' confinement for the aggravated kidnapping case and a sentence of seventy-five years' confinement for the aggravated robbery case. The sentences were to run concurrently.

Applicant asserts that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars conviction and punishment for both the aggravated kidnapping and aggravated robbery offenses. He asserts that conviction and punishment under one of the two indictments would be proper, but not under both. He seeks to have this Court set aside one of those convictions. We will deny relief.

The Fifth Amendment provides in relevant part: "[N]or shall any person be subject to the same offense to be twice put in jeopardy of life or limb." This Double Jeopardy Clause serves three primary purposes:

"(1) It protects against a second prosecution for the same offense after acquittal;

"(2) It protects against a second prosecution for the same offense after conviction; and

"(3) And it protects against multiple punishments for the same offense."

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665 (1969) (footnotes omitted). Applicant has not been subjected to multiple prosecutions—he was tried in a single trial before the same jury.

The Double Jeopardy Clause is cast expressly in terms of being "twice put in jeopardy," and the Supreme Court of The United States has consistently interpreted that clause " 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' " *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2

L.Ed.2d 199 (1957). The Supreme Court has said that where *successive prosecutions* are at stake the guarantee of not being twice placed in jeopardy serves "a constitutional policy of finality for the defendant's benefit." *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971) (plurality opinion). This policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, e.g., *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and from attempts to secure additional punishment after a prior conviction and sentence. See *Green*, 355 U.S. at 187–188, 78 S.Ct. at 223–224, 2 L.Ed.2d at 204. Because applicant was subjected to only one trial, his right to be free from multiple trials for the same offense and the police considerations of *Ashe* and *Green* are not implicated. Only the third aspect of *Pearce*, that of multiple punishments, is involved in this case.

The seminal case in the area of multiple punishments is *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There, the Supreme Court held that consecutive sentences under two different sections of the federal narcotics law were permissible even though there was only one sale of narcotics since "[e]ach of the offenses created requires proof of a different element." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The rule established in *Blockburger* was that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Applicant was charged and convicted of aggravated kidnapping; in that indictment there is an allegation that the kidnapping occurred "with intent to facilitate the commission of the felony of Robbery." It may be that the evidentiary facts relied upon to prove the robbery, alleged in the aggravated kidnapping indictment, are the same as those relied upon to convict applicant of the

aggravated robbery.[1] For purposes of this opinion we assume that the State in proving the robbery allegations made in the aggravated kidnapping indictment relied upon the same evidentiary facts as those relied upon to prove the aggravated robbery case such that the aggravated kidnapping case enveloped the aggravated robbery case. See *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *May v. State*, 726 S.W.2d 573 (Tex.Cr.App. 1987). The issue then is whether the Fifth Amendment guarantee against double jeopardy bars punishment for both offenses when prosecution on those offenses is had in a single trial. We find our answer in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

In *Hunter*, the defendant was charged and convicted in a single trial of armed criminal action and first degree robbery. He was assessed a separate sentence for each offense pursuant to two Missouri statutes which provided a certain punishment for any person who committed a felony through the use of a deadly weapon ("armed criminal action") and a separate Missouri statute which provided a certain punishment for any person who committed a robbery by means of a deadly weapon. The Missouri Court of Appeals reversed the defendant's conviction for the armed criminal action finding that the Double Jeopardy Clause "prohibits imposing punishment for both armed criminal action and for the underlying felony." The Supreme Court of the United States reversed.

The Supreme Court accepted the Missouri court's interpretation that the two offenses in question defined the same crime under *Blockburger* and its progeny. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543. The Supreme Court, however, rejected the Missouri court's conclusion that the Double Jeopardy Clause had been violated. The Court wrote:

"[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, *in a single trial,* of cumulative punishments pursuant to those statutes....

"Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, *regardless of whether those two statutes proscribe the 'same' conduct under Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." 459 U.S. at 368–369, 103 S.Ct. at 679, 74 L.Ed.2d at 543–544 (emphasis added).

Therefore, the Double Jeopardy Clause, though a barrier to legislative attempts to authorize retrial after an acquittal or conviction, simply does not intrude on prerogatives in fashioning the statutory framework that will govern a court's sentencing decisions. Its purpose in the punishment phase of the trial " 'is limited to assuring that the [sentencing] court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' " *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981) quoting *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225, 53 L.Ed.2d at 194. When reviewing a defendant's claim that the sentences he received in a single criminal trial violate the Double Jeopardy Clause, therefore, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to impose." *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285.[2]

---

1. Neither the State nor applicant has furnished this Court with a statement of facts. Applicant in his application has outlined only those facts he deems dispositive of the issues. The State has responded with a general denial of all facts asserted in the application that are not supported by the record. We find it unnecessary to address any disagreement between the parties; regardless of whether the evidentiary facts are the same in each offense as to the robbery allegations, our opinion would be the same.

2. Whether the Texas Legislature intended multiple convictions and sentences in this case is not before the Court. We therefore do not address the issues of whether the Legislature so intended and, if not, whether this may be raised by way of collateral attack. See *Ex parte Crispen,*

Thus, the case at bar is unlike *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). There the Supreme Court was asked to address whether D.C. Code, Section 23–112 (1973) permitted cumulated sentences against one convicted of rape and murder in the course of rape when the rape offense was enveloped by the murder offense. Section 23–112 provided that, "[a] sentence imposed on a person for conviction of an offense shall . . . run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) *arises out of the same transaction and requires proof of a fact which the other does not."* (Emphasis added). The Supreme Court found that the "emphasized language prevented a trial court from cumulating sentences for two offenses arising out of the same criminal transaction unless each offense requires proof of a fact which the other does not." Although reference was made to *Blockburger,* the Supreme Court determined that as a matter of statutory construction, in that case, a trial court could not cumulate the rape and murder sentences. *Whalen,* 445 U.S. at 695, 100 S.Ct. at 1439, 63 L.Ed.2d at 725– 726. In a concurring opinion, Justice White observed that "the question is one of statutory construction and does not implicate the Double Jeopardy Clause." 445 U.S. at 696, 100 S.Ct. at 1440, 63 L.Ed.2d at 726 (concurring opinion per White, J.). The Justice went further to explain that "[h]ad congress authorized cumulative punishments, as the District of Columbia Court of Appeals held in this case, imposition of

777 S.W.2d 103 (Tex.Cr.App.1989) (plurality opinion). See also *Ex parte Truong,* 770 S.W.2d 810 (Tex.Cr.App.1989).

3. Applicant also raises claims concerning the introduction of extraneous offense evidence at his trial and concerning ineffective assistance of counsel based upon counsel's failure to object to the extraneous offense testimony and to raise double jeopardy claims. We note simply that the issue regarding the extraneous offense testimony was decided adversely to applicant on original appeal when the Court of Appeals addressed applicant's claims on the merits, and *applicant's* attorney is not faulted for asserting a meritless double jeopardy claim.

such sentences would not violate the Constitution." 445 U.S. at 696, 100 S.Ct. at 1440, 63 L.Ed.2d at 726. See also *Albernaz,* 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285.

Therefore, we conclude that the trial court, in assessing punishments for both the aggravated kidnapping offense and the aggravated robbery offense, did not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The State's motion for rehearing is granted. The relief for which applicant prays is denied.[3]

CAMPBELL, J., concurs in the result.

CLINTON, Judge, dissenting.

The majority correctly frames the issue in this cause, *viz:*

"... The issue then is whether the Fifth Amendment guarantee against double jeopardy bars punishment for both offenses *when prosecution for those offenses is had in a single trial."*

At 625.[1] The answer, it says, is "in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)." *Ibid.* Presumably it means the answer lies in two conclusional excerpts selected from the *Hunter* opinion, reproduced in its own opinion at page 5; however, such selectivity only papers over treatment by federal courts of implications of the Double Jeopardy Clause in context of a single trial involving simultaneous prosecutions for alleged violations of more than one statutory provision. The problem is more complicated

1. Because it arose only under the Fifth Amendment, the Court is not called on to address the issue under the Constitution and laws of Texas. Had both offenses been alleged in one indictment there could be but one conviction and punishment: *Fortune v. State,* 745 S.W.2d 364 (Tex.Cr.App.1988); *Holcomb v. State,* 745 S.W.2d 903 (Tex.Cr.App.1988); consequences of consolidating two indictments for trial is not made an issue in this cause.

(All emphasis throughout this opinion is mine unless otherwise indicated.)

than indicated by the majority. As the present Chief Justice has characterized it, "[T]he decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States,* 450 U.S. 333, at 343, 101 S.Ct. 1137, at 1145, 67 L.Ed.2d 275 (1981). Let us then set sail through the gulfweed.[2]

First we come to *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); convictions obtained in the Superior Court of the District Columbia are for rape and killing the same victim in perpetration of rape; Whalen was sentenced to consecutive terms of imprisonment for twenty years to life for first degree murder and to fifteen years to life for rape. *Id.,* at 686, 100 S.Ct., at 1434. Because the Supreme Court reviewed a decision of the District of Columbia Court of Appeals affirming the convictions and sentences without according "the customary deference [to its] construction of local federal legislation," disposition of the case turned on its own determination of the issue, *viz:*

"... In the present case, therefore, if Congress has not authorized cumulative punishments for rape and for an inten-

tional killing committed in the course of rape, contrary to what the Court of Appeals believed, the petitioner has been impermissibly sentenced. The dispositive question, therefore, is whether Congress did so provide."

*Id.,* at 688–689, 100 S.Ct., at 1436. The Supreme Court would conclude that the Court of Appeals was indeed mistaken, and "because that error denied the petitioner *his constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress,*" it reversed the judgment below. *Id.,* at 690, 100 S.Ct., at 1437.

The Supreme Court began its analysis by examining the two penal statutes involved, noting that "rape and the killing of a person in the course of rape in the District of Columbia are separate statutory offenses for which punishments are separately provided. Neither statute, however, indicates whether the Congress authorized consecutive sentences where both statutes have been offended in single episode. Moreover, the legislative history of those specific penal provisions sheds no light on that question." So it turned to a general sentencing statute, providing for optional cumulative sentencing in terms set out in the margin.[3]

---

2. Nearly all such cases are in a setting of federal procedures which allow joining in one charging instrument every offense now described in Fed. R.Cr.P. 8(a), but restrict a valid conviction and sentence to each distinctly separate offense. To resolve a claim that sentences were improperly imposed on two or more counts that constitute but a single offense in law, federal courts often resorted to common law rules and tests, for example, the ubiquitous "same evidence" test taken from *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871). See, e.g., *Carter v. McClaughry,* 183 U.S. 365, at 394–395, 22 S.Ct. 181, at 193, 46 L.Ed. 236 (1902); *Gavieres v. United States,* 220 U.S. 338, at 342, 31 S.Ct. 421, at 422, 55 L.Ed. 489 (1911) (second prosecution); *United States v. Daugherty,* 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309 (1926); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Application of those rules and tests might sometimes be intermixed with jeopardy principles, and discussion of congressional intent pretermitted, e.g., *Ex parte Lange,* 18 Wall. 163, at 168–174, 21 L.Ed. 872, at 876–878 (1874); when congressional intent was examined and found unclear, the lenity doctrine would be applied in favor of defendant. See generally *Spradling v.*

*State,* 773 S.W.2d 553 (Tex.Cr.App.1989) (Clinton, J., dissenting at 557–559).

Later, however, as in cases cited in the majority opinion at 5–7, the Supreme Court came to understand the *"Blockburger* rule" rested on an assumption "that Congress ordinarily does not intend to punish the same offense under two different statutes," *Whalen v. United States,* 445 U.S. 684, 691–692, 100 S.Ct. 1432, at 1437–1438, 63 L.Ed.2d 715 (1980), so where they *do* "proscribe the 'same offense,' they are construed *not* to authorize cumulative punishment in the absence of a clear indication of *contrary* legislative intent." *Ibid.*

Opinions will demonstrate that the focus shifted from common law rules and jeopardy law to exploration for clearly expressed congressional intent authorizing multiple punishment for convictions in a single trial on one indictment. Absent that kind of authority the Supreme Court utilized the *Blockburger* rule of statutory construction to ascertain congressional intent.

3. District of Columbia Code § 23–112 reads:

"A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides

The Supreme Court pointed out that the statutory clause "requires proof of a fact which the other does not" "refers, of course, to a rule of statutory construction stated by this Court in *Blockburger v. United States*, [supra], and consistently relied on ever since to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." *Id.*, at 691, 100 S.Ct., at 1437.

While today the majority is content to say, "Although reference was made to *Blockburger,* the Supreme Court determined that as a matter of statutory construction, in that case, a trial court could not cumulate the rape and murder sentences," slip opinion at 6, the fact of the matter is the *Whalen* opinion goes on to explain *Blockburger,* to explore legislative history of § 23–112, to find that history "clearly confirms that Congress intended the federal courts to adhere strictly to the *Blockburger* test when construing the penal provisions of the District of Columbia Code." *Id.*, 691–692, 100 S.Ct., at 1437–1438, and to conclude:

"We think the only correct way to read § 23–112, in light of its history and evident purpose, is to read it as embodying the *Blockburger* rule for construing the penal provisions of the District of Columbia Code. Accordingly, where two statutory offenses are not the same under the *Blockburger* test, the sentences imposed 'shall, unless the court expressly provides otherwise, run consecutively.' And where the offenses are the same under that test, cumulative sentences are not

permitted, unless elsewhere specially authorized by Congress."

*Id.*, at 693, 100 S.Ct., at 1438. Therefore, the Supreme Court proceeded to apply the *Blockburger* rule, *viz:*

"... Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that 'each provision requires a proof of fact which the other does not.' A conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape. [citations omitted]."

*Id.*, at 693–694, 100 S.Ct., at 1439. Justice White concurred separately and aligned himself with concurring Justice Blackmun and dissenting Justice Rehnquist on the proposition that the question of statutory construction does not implicate the Double Jeopardy Clause, Id., at 696, 100 S.Ct., at 1440. Justice Rehnquist developed at some length what turned out to be a sort of harbinger of the opinion he wrote for the Supreme Court in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).[4]

Moving on to *Albernaz,* the first contention was that Congress did not intend to authorize cumulative punishments for violation of two provisions under which convictions were had; writing for the Court, Justice Rehnquist found the answer "in application of the rule announced by this court in *Blockburger v. United States* ... and most recently applied last Term in *Whalen v. United States* ...," which he proceeded to apply. *Id.*, 450 U.S. at 337–

---

otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction or (2) *arises out of the same transaction and requires proof of a fact which the other does not."*
Id., at 691, 100 S.Ct., at 1437 (emphasis in original). Apparently this aspect of the case is what persuades the majority to say the instant cause is "unlike *Whalen,*" at 626; see text *infra.*

**4.** The majority seems to be laboring under the impression that the views expressed by Justice White were subsequently accepted by the Court, at 626, and therefore the *Blockburger* rule of statutory construction as "consistently relied on ever since" by the Supreme Court, and as again

explicated and applied in *Whalen,* has lost its relevance, if not vitality, in determining legislative intent regarding permissible imposition of cumulative punishment. Having assumed early on that "the State in proving the robbery allegations, made in the aggravated kidnapping indictment, relied upon the *same evidentiary facts* as those relied upon to prove the aggravated robbery case such that the aggravated kidnapping case enveloped the aggravated robbery case," at 625, the majority never makes any kind of *"same offense"* analysis, such as done in *Whalen.* In this the majority has missed the point made in the cases, including both "subsequent acceptances" to which it alludes, namely, *Albernaz v. United States,* supra, and *Missouri v. Hunter,* supra.

339, 101 S.Ct., at 1141–1142. Later, he wrote that *Blockburger* is "a 'rule of statutory construction,' [serving] as a means of discerning congressional purpose," but believed that the rule should not control over "a clear indication of contrary legislative intent;" however, nothing in legislative history "discloses an intent contrary to the presumption which should be accorded to these statutes *after application of the Blockburger test." Id.*, at 340, 101 S.Ct. at 1143. Having thus adhered to *Blockburger,* Justice Rehnquist next rejected application of the rule of lenity, at 342–343, 101 S.Ct., at 1144, and concluded with comments about the Double Jeopardy Clause to which the majority no doubt refers, at 344, 101 S.Ct. at 1145. Note 3, however, explains that those comments are made in a context of finding that the punishments at issue are not for the "same offense," *viz:*

> "Petitioners' contention that a single conspiracy [under the statutory provisions] constitutes the 'same offense' for double jeopardy purposes is wrong. We noted in *Brown v. Ohio*, that the established test for determining whether two offenses are the 'same offense' is the rule set forth in *Blockburger—the same one on which we relied in determining congressional intent.* [Violations of those provisions] *clearly meet the Blockburger standard.* [A] single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. [citations omitted]."

Leaving *Albernaz,* we return to *Missouri v. Hunter,* supra, where the majority believes it found the answer.

The statutes considered in *Missouri v. Hunter,* supra, are, as the majority characterizes them, "separate" in the sense each was enacted temporally and placed spatially from the other. However, one is dependent on the other, and that the legislature especially so provided is the sole basis for the conclusion reached by the Supreme Court.

The "separate" offenses in question proscribed by different statutes are robbery by means of a dangerous or deadly weapon and "armed criminal action."

Under one statute, when robbery is committed by means of a dangerous or deadly weapon, it is punishable by a minimum of five years confinement.

Under the other statute, when any felony is committed by, with, or through use, assistance or aid of a dangerous or deadly weapon, the perpetrator is *"also* guilty of the crime of armed criminal action," punishable by not less than three years. Further, this statute provides:

> "... The punishment imposed pursuant to this subsection *shall be in addition to* any punishment provided by law for the [underlying] crime [committed with a dangerous or deadly weapon.] * * * *"

*Id.*, 459 U.S. at 361–362, 103 S.Ct., at 676.

Having construed the two statutes as defining the same crime, the Missouri Supreme Court vacated the conviction for armed criminal action on the theory that the Double Jeopardy Clause protects against multiple punishments for the "same offense." The Supreme Court, through Chief Justice Burger, noted that because Hunter had been subjected to only one trial, he did not contend that "his right to be free from multiple trials for the same offense has been violated;" thus the Missouri court "misperceived the nature of [its] protection against multiple punishments," *viz:*

> "... *With respect to cumulative sentences imposed in a single trial,* the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing *greater punishment than the legislature intended."*

*Id.*, at 366, 103 S.Ct., at 678. The Supreme Court accepted that the statutes defined the same crime and that the legislature intended punishment for each be cumulative, but disagreed with the jeopardy conclusion. *Id.*, at 368, 103 S.Ct., at 679. The analysis done by Chief Justice Burger is succinctly stated, *viz:*

> ".... The rule of statutory construction noted in *Whalen* [445 U.S., at 691–692, 100 S.Ct., at 1437–1438] is not a constitutional rule requiring courts to negate

clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Here the Missouri Legislature has made its intent crystal clear."

*Id.*, at 368, 103 S.Ct., at 679.

Accordingly, because the legislative intent in passing the two penal statutes was "crystal clear," resort to the *Blockburger* rule was not appropriate, as the Supreme Court concluded in the second paragraph set out in the majority opinion at 5.

Thus the setting of the situation and the condition precedent to its conclusion is that "a legislature *specifically authorizes cumulative punishment* under two statutes" proscribing "the 'same' conduct." In that instance, *Blockburger* and jeopardy principles do not bar imposition of "cumulative punishment under *such statutes* in a single trial." *Id.*, at 369, 103 S.Ct., at 679.

Despite the unambiguous context in which it is made and in the face of the plain pronouncement by the Supreme Court that the issue is controlled by *legislative provisions AFFIRMATIVELY authorizing cumulative punishment for violation of two particular penal statutes*, along with its demand for *specific legislative authorization of cumulative punishment under the very two statutes denouncing the offenses and prescribing the punishment*, the majority makes no effort to find any such affirmative legislative authorization for what is being done in this cause.[5]

The majority has yet to demonstrate any such clearly expressed legislative intent that permits dispensing with application of the *Blockburger* rule.

For the foregoing reasons, the majority is in error; it reaches conclusions that its opinion fails to justify. On the other hand, State's Motion for Rehearing and Brief in Support Thereof, does address the *Blockburger* test, but only to the extent of "a superficial reading of these two statutes" to conclude that double jeopardy principles do not prohibit multiple punishments in this cause.[6]

As a matter of federal law on joinder of offenses and on decisions by the Supreme Court construing the Fifth Amendment, I am convinced that the controlling question here still is whether the Legislature authorized separate punishments for these two offenses. There can be no doubt that it has not done so expressly and specifically, as in *Missouri v. Hunter.* Thus the answer must be found in a *Blockburger* analysis that the majority does not make before concluding that assessment of separate punishments for these convictions does not violate the Double Jeopardy Clause of the Fifth Amendment.

Accordingly, I respectfully dissent.

MILLER, J., joins.

TEAGUE, Judge, dissenting.

Believing that this Court correctly ruled on original submission that William Herron, Jr., henceforth applicant, was entitled to relief under the Double Jeopardy Clause of the Fifth Amendment to the Federal Con-

---

**5.** To acknowledge that the Government has "broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case," however, is not to say that an accused "may be *convicted and punished for two offenses.*" Ball v. United States, 470 U.S. 856, at 859–861, 105 S.Ct. 1668, at 1670–1671, 84 L.Ed.2d 740 (1985). Application of the *Blockburger* test of statutory construction and its underlying assumption may preclude "a criminal *conviction,* not simply the imposition of sentence," *id.,* at 861, 105 S.Ct., at 1671. Thus, again, the question is one of legislative intent, ascertained after resort to germane sources such as legislative history, and where it is determined that "Congress did not intend [accused's] conduct to be punishable under both

[provisions]," the only remedy is to "vacate one of the underlying *convictions.*" *Id.,* at 864, 105 S.Ct., at 1673. See *United States v. Gaddis,* 424 U.S. 544, at 550, 96 S.Ct. 1023, at 1027, 47 L.Ed.2d 222 (1976).

**6.** On the question of legislative intent, federal decisions discussed and cited throughout this opinion make clear that the inquiry may embrace investigating more than bare statutory provisions. Left open, but suggested in some contexts, among other considerations are ramifications of allegations in the charging instruments, as well as proof made in sustaining them.

stitution, I respectfully dissent to this Court's majority refusing him relief on State's Motion for Rehearing. I adopt this Court's opinion on original submission, and make same a part of this dissenting opinion. See "Exhibit A."

## EXHIBIT A

## OPINION

This is a post-conviction application for the writ of habeas corpus filed by William Herron, Jr., hereinafter applicant, that is before this Court pursuant to the provisions of Article 11.07, Sec. 2, V.A.C.C.P.

Applicant asserts in his application that an aggravated robbery conviction that he sustained in 1984 when he was tried in a consolidated trial for the offenses of aggravated kidnapping and aggravated robbery should be set aside pursuant to the Double Jeopardy Clauses of the Federal and State Constitutions. Finding that we are in agreement with applicant, we will grant him relief.

The indictment for aggravating kidnapping alleges, in pertinent part, that applicant "did then and there unlawfully intentionally and knowingly restrain [the Complainant], by using and threatening to use deadly force with intent to prevent the liberation of the Complainant, *and with intent to facilitate the commission of the felony of robbery.* (Our emphasis). One of the ways that the offense of aggravated kidnapping may be committed is when a person intentionally or knowingly abducts another person *with the intent to facilitate the commission of a felony.* V.T.C.A., Penal Code, sec. 20.04.

The indictment for aggravated robbery alleges, in pertinent part, that applicant "did then and there unlawfully, while in the course of committing theft of property owned by [the Complainant], and with intent to obtain and maintain control of the property, *intentionally and knowingly threaten and place the Complainant in fear of imminent bodily injury and*

*death, by using and exhibiting a deadly weapon, namely, a firearm."* (Our emphasis.) One of the ways that the offense of aggravated robbery may be committed is when a person, in the course of committing theft, and with intent to obtain or maintain control of the property, *intentionally or knowingly threatens or places another in fear of imminent bodily injury or death,* and uses or exhibits a deadly weapon. V.T.C.A., Penal Code, Sec. 29.03.

The facts reflect that applicant and another individual took control of the complainant's car at gun point and while driving the complainant around the City of Houston, robbed her of her money, watch, and ring. The applicant and his companion subsequently released the complainant but kept possession of her car, a gold 1978 Mercury Cougar, license number RGZ854. The facts clearly reflect that the two offenses arose out of one continuous transaction, against the same victim on the same date, and involved the taking of property from the same person.

As previously pointed out, applicant was separately indicted for the offenses of aggravated kidnapping and aggravated robbery, and after a consolidated trial was convicted of each offense.

The trial judge assessed punishment for the aggravated kidnapping offense at 20 years' confinement in the Department of Corrections [1] and 75 years' confinement in the Department of Corrections for the aggravated robbery offense. The First (Houston) Court of Appeals affirmed both convictions in an unpublished opinion. *See Herron v. State,* Nos. 01–84–590–CR and 01–84–591–Cr, August 15, 1985. Applicant's petition for discretionary review was refused by this Court on October 8, 1986, without written comment or opinion. *See Herron v. State,* Court of Criminal Appeals No. 1085–85. The Double Jeopardy claim presented in this cause was not presented on direct appeal. However, in *Ex Parte Bowman,* 523 S.W.2d 677 (Tex.Cr.App. 1975), this Court permitted the raising of a

---

1. Now called the Texas Department of Criminal Justice, Institutional and Board of Pardons and Paroles Division.

double jeopardy claim through post-conviction habeas corpus, and granted the defendant relief in that cause.

The federal constitutional Double Jeopardy Clause has been interpreted to mean that the State is prohibited from twice prosecuting an individual after acquittal or conviction. It also prohibits the imposition of multiple punishments for the same offense. An acquittal has been defined as a resolution, whatever its label, of some or all of the factual elements of the offense charged. *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986); *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See also Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), (holding that the Federal Double Jeopardy Clause incorporates collateral estoppel as a constitutional requirement.)

The Federal Constitutional guarantee against double jeopardy is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

As previously pointed out, the facts reflect that the aggravated kidnapping offense and the aggravated robbery offense arose out of one continuous transaction, against the same victim on the same date, and involved the taking of property from the same person.

In *Ex Parte McWilliams*, 634 S.W.2d 815, 822–824 (Tex.Cr.App.1982) (opinion on rehearing) a majority of this Court voted to abandon the doctrine of carving, a judicially created principle which prohibited successive prosecutions for offenses, even though separate and distinct, which arose from the same transaction and required the same basic evidence for conviction. The carving doctrine prohibited the State from carving more than one conviction out of a continuous assaultive act committed upon the same person during the same transaction.

The majority in *Ex Parte McWilliams*, *id*, opted for the *"Blockburger* rule" as the test to resolve jeopardy problems. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Supreme Court of the United States in that case, however, only laid down a test to be used to determine what the federal legislative intent was with regard to multiple punishments in a single trial when the indictment alleges offenses in two or more counts, and the act or transaction from which the offenses arose violates at least two distinct statutory provisions.

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Id.* 284 U.S. at 304, 52 S.Ct. at 182.

In *May v. State*, 726 S.W.2d 573 (Tex.Cr. App.1987), a unanimous Court pointed out the following which was apparently overlooked by the majority in *McWilliams*, 634 S.W.2d 815:

> Although *McWilliams* noticed opinions of the Supreme Court after *Blockburger* dealing "with other double jeopardy matters", it considered them "matters not pertinent to the decision in this case." (Footnote deleted). As will be shown, however, they are in this case.

> Since *McWilliams* we have been given to understand that when one act or transaction violates two distinct statutory provisions, "the *Blockburger* test" is purely a rule of statutory construction, utilized in what is "essentially a factual inquiry as to legislative intent [rather than] a conclusive presumption of law." (Citations deleted). Whether by *Blockburger* or other means a court has determined that the legislative body intended punishment for both offenses, it then must decide whether successive prosecutions are barred by the Double Jeopardy Clause,

and in order " 'to properly analyze that issue, we must examine not only the statute ..., but also the charges which form the basis of the Government's prosecution here.' " (Citations deleted).

*May*, 726 S.W.2d at 574.

This Court in *May, id.* at 577 also held: "The Court will adhere to *McWilliams* in so far as it abandoned the carving doctrine, but to say that it correctly adopted *Blockburger* as the sole test for determining jeopardy where an act or transaction violates two separate and distinct statutes is to ignore a whole body of jeopardy law to the contrary."

Recently in *Simmons v. State*, 745 S.W.2d 348 (Tex.Cr.App.1987), this Court was presented with the situation where the defendant had been convicted of two aggravated robberies of two different victims. However, the same common element, theft of money from one victim, was used in the prosecution of both offenses, which prosecution occurred at separate times. The defendant claimed that the state should not have prosecuted him for the second aggravated robbery because "the theft of Nichols' money was identical to that used to convict him of the Sawyers robbery", i.e., this proof had already been presented when appellant was tried and convicted for the aggravated robbery of Sawyers. Thus, the defendant argued that the same theft evidence was used in both cases which thereby placed him in jeopardy twice for the same offense. This Court pointed out that "[t]he only difference between the two indictments was the name of the person placed in the fear of imminent injury." An almost unanimous Court sustained the defendant's contention, relying upon *Ex parte Crosby*, 703 S.W.2d 683 (Tex.Cr.App.1986), in which there were no dissents or dissenting or concurring opinions, as its aythority, and held: "The facts in the instant case are identical except for the person alleged to have been placed in fear of imminent bodily harm. Thus, the law as set forth in *Crosby*, controls our disposition of this case."

In *Crosby, id.* this Court held the following:

The penal code makes it clear that theft is an integral part of the offense of aggravated robbery. In the instant case only one theft of one person occurred. Thus, only one aggravated robbery can have taken place. Applicants appropriated property belonging to W.H. Thurston. The fact that they assaulted more than one person in the course of that theft does not mean that more than one aggravated robbery took place. Perhaps applicants should have been indicted and convicted for an additional aggravated robbery.

This Court also pointed out in *Simmons* that "A second basis for reversal is found in *January v. State*, 695 S.W.2d 215 (Tex. App.–13th 1985), affirmed on State's petition for discretionary review in *January v. State* 732 S.W.2d 632, at 632 (Tex.Cr.App. 1987)," in which this Court unanimously stated the following:

We have reviewed that part of the Court of Appeals' opinion dealing with the merits of the jeopardy issue (asterisk omitted) and find (sic) it to be sound. *See May v. State*, 726 S.W.2d 573 (Tex.Cr. App.1987). We therefore adopt that part of the opinion as our own, without further comment. The judgment of the Court of Appeals is affirmed.

The facts that are set out in the Corpus Christi Court of Appeals' opinion of *January* reflect that the defendant was indicted by separate indictments for the aggravated kidnapping of another individual and attempted capital murder of that same individual. The defendant's request that the indictments be consolidated for trial purposes was denied, after which the defendant was convicted in separate trials of both offenses. He was first convicted of the aggravated kidnapping offense, and was thereafter convicted of the attempted capital murder offense. The defendant did not file any "double jeopardy plea" to the second trial. The evidence presented at the aggravated kidnapping offense was in all things identical to that presented at the later attempted capital murder offense.

The defendant claimed on appeal from the attempted capital murder conviction that the State was precluded by the Double Jeopardy Clauses from prosecuting him for that offense, because of his earlier conviction for the aggravated kidnapping offense. The court of appeals agreed with the defendant and sustained his contention.

The Corpus Christi Court of Appeals first pointed out that the question of former jeopardy is so fundamental in nature that it may be raised for the first time on appeal. *See also Jones v. State,* 586 S.W.2d 542, 544 (Tex.Cr.App.1979). The court of appeals next held that the double jeopardy test announced in *Blockburger* (Held, jeopardy protections prohibit multiple punishments unless one offense requires proof of a fact which the other does not), was not the only test to apply to double jeopardy determinations. [*See also* the discussion of *Blockburger* that is found in *May v. State* (Held, "the *Blockburger* test" is purely a rule of statutory construction utilized in what is essentially a factual inquiry as to legislative intent [rather than] a conclusive presumption of law ...) ] The court of appeals concluded that the *Blockburger* test focuses upon the statutory elements of the two offenses involved and the *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), test, i.e., "A person who has been tried and convicted for a crime which has various incidents included in it ... cannot be a second time tried for one of the incidents without being twice put in jeopardy for the same offense," 131 U.S. at 188, 9 S.Ct. at 676, focuses upon the factual issues already resolved by the first trial. The court of appeals also correctly held that in addition to the *Blockburger* analysis, the Double Jeopardy Clauses prohibit the State from seeking successive prosecutions when the subsequent prosecution requires proof of an incident already litigated in the first prosecution. The court of appeals then sustained the defendant's contention that the State was prohibited from prosecuting him for the attempted capital murder case.

By creatively choosing which elements it hoped to prove by the same evidence, the State was able to convict appellant for two aggravated offenses in two prosecutions, wherein the aggravating element for each offense was the other offense ... (223).

This Court also unanimously held that a prosecution for involuntary manslaughter arising out of an automobile accident was barred by double jeopardy, given the fact that a prior conviction for driving while intoxicated arising out of the same accident had previously occurred. *Ex parte Peterson,* 738 S.W.2d 688 (Tex.Cr.App.1987).

In this instance, the record is clear that the State sought two convictions at one time, which, for double jeopardy purposes, is the equivalent to subsequent prosecutions. The robbery subject in the aggravated kidnapping offense is the same robbery underlying the aggravated robbery offense and the proof adduced to establish the aggravated kidnapping offense was in all things identical to the proof necessary to establish the aggravated robbery offense. Therefore, the *January,* \* \* \* \* \* prohibition against relitigation of a common incident applies. Alternatively, since the State was not seeking multiple punishments, the *Blockburger* analysis is not dispositive. The State's observation that the aggravated robbery offense required proof of a fact unnecessary to establish aggravated kidnapping is irrelevant. Given the fact that both of the instant offenses require proof of robbery, the *January* prohibition applies.

Therefore, in light of what we have previously stated, the State violated applicant's right to be free from double jeopardy in obtaining two convictions which involved proof of the same common incident. The trial judge was prohibited by the Double Jeopardy Clauses from entering a judgment of conviction for the aggravated robbery offense after he had entered the judgment of conviction for the aggravated kidnapping offense.

Applicant is entitled to relief. The judgment in the Harris County cause styled The State of Texas v. William Herron, Jr., bear-

ing number 407,817, the higher cause number, is hereby set aside, and the indictment in that cause is ordered dismissed. The judgment in the Harris County cause styled The State of Texas v. William Herron, Jr., bearing 407,816, the lower cause number, remains in full force and effect.

A copy of this opinion will be forwarded by the Clerk of this Court to the Department of Corrections and to the District Clerk of Harris County.

PER CURIAM

EN BANC

DELIVERED: May 11, 1988

DO NOT PUBLISH

ONION, P.J., and DAVIS, CAMPBELL and WHITE, JJ., concur.

McCORMICK, MILLER and DUNCAN, JJ., dissent.