Opinion issued June 8, 2006




     







In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01022-CR
NO. 01-04-01244-CR
NO. 01-04-01245-CR
NO. 01-04-01246-CR
NO. 01-04-01247-CR
NO. 01-04-01248-CR
NO. 01-04-01249-CR




JAMES EDWARD HUNT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 278th District Court
Grimes County, Texas
Trial Court Cause No. 14,951




 

MEMORANDUM OPINION
          Appellant, James Edward Hunt, appeals from seven convictions resulting from
a seven-count indictment in trial court cause number 14,951. The complainant was
a six-year-old child at the time of the dates listed in the indictment. The first three
counts of the indictment allege aggravated sexual assault of a child, asserting that
appellant caused his sexual organ to penetrate the female sexual organ of the
complainant. See Tex. Pen. Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2005). 
Counts one and three each assert that two offenses occurred on or about July 20,
2002, and count two asserts that one offense was committed on or about July 19,
2002. Count four of the indictment also alleged aggravated sexual assault of a child,
asserting that on or about July 20, 2002, appellant caused his tongue to penetrate the
female sexual organ of the complainant. See id. The last three counts of the
indictment, counts five through seven, charged appellant with indecency with a child. 
See Tex. Pen. Code Ann. § 21.11 (Vernon 2003). Counts five and six of the
indictment each allege that appellant, with intent to arouse and gratify his sexual
desire, intentionally and knowingly engaged in sexual contact by touching the
genitals of the complainant. Count five asserts that an offense occurred on or about
July 20, 2002, while count six asserts that an offense occurred on or about July 19,
2002. Count seven of the indictment alleged that appellant, on or about July 19,
2002, with intent to arouse and gratify the sexual desire of appellant, intentionally and
knowingly engaged in sexual contact by touching the breasts of the complainant.
          Appellant pleaded not guilty to the offenses before a jury that found him guilty
of all of the offenses. The jury assessed his sentences at 20 years in prison for each
count of aggravated sexual assault of a child, counts one through four, and 10 years
in prison for each count of indecency with a child by contact, counts five through
seven. The trial court ordered that all sentences run concurrently. 
          In his first issue in this appeal, appellant challenges all of the convictions,
asserting that the evidence is legally insufficient to show that there was no spousal
relationship between him and the complainant. In his second issue, appellant
contends that the convictions in counts three, five and six must be vacated because
those convictions violate his Fifth Amendment right against double jeopardy. 
Appellant also contends that the judgment in count three must be vacated because it
asserts the identical offense, manner and means, and date, as the offense stated in
count one. Appellant also contends that the judgment in count five must be vacated
because it asserts indecency with a child by contact, which is the lesser included
offense of the aggravated sexual assaults for which appellant was convicted in counts
one and three. Appellant further asserts that the judgment in count six for indecency
with a child by contact must be vacated because it asserts the lesser included offense
of aggravated sexual assault for which appellant was convicted in count two.
          We conclude that the circumstantial evidence is legally sufficient to establish
that the six-year-old complainant was not the spouse of appellant. We further
conclude that appellant’s judgments are not barred by double jeopardy because the
record shows four separate offenses of aggravated sexual assault of complainant, in
addition to three separate offenses of indecency with a child by contact. We therefore
affirm. Factual and Procedural BackgroundDuring a two-week period that began on July 4, 2002, appellant, who was 17
years of age, lived with complainant, her three siblings, and her parents. Appellant
was an acquaintance of the family and was allowed to live there because he needed
a place to stay. Although they were not related, complainant referred to appellant as
“her big brother.”
          According to appellant’s audiotaped statements admitted at trial, the first
improper contact between complainant and appellant occurred in the complainant’s
bedroom, as complainant and appellant lay in her bed together. According to
appellant, after complainant pulled her own underwear and pants down, he
“accidentally” shoved “the tip” of his erect penis into her private part.
          On the following night, the second sexual episode between appellant and
complainant occurred. According to appellant’s audiotaped statements, appellant was
again in complainant’s bedroom lying in bed with her, when his erect penis
“accidentally” touched her private part. Complainant’s mother awoke at around 3:00
a.m. when she heard a scream and crying. Complainant’s mother went into
complainant’s bedroom, where complainant told her that appellant had peed on her. 
The complainant’s bed and clothes, however, were not wet. After complainant told
her mother that she had been cuddling with appellant, complainant’s mother told
appellant that boys were not allowed in the girl’s bedroom. Complainant then slept
in her mother’s bedroom.
          Complainant also described a third sexual encounter with appellant that
occurred in her bedroom. At trial, and on the videotape of complainant that was
admitted into evidence at appellant’s trial, complainant stated that appellant “licked”
her “pee-pee” when he was in her bedroom. 
          A fourth episode occurred about two weeks later, while complainant and
appellant were on a couch. According to complainant’s videotaped statements, while
they were on the couch, appellant took complainant’s pants off, and “stuck his
tallywacker” into her “pee-pee” area, which hurt her and made her cry. During their
time together on the couch, according to appellant, complainant pulled his pants
down and also put her breast in his mouth, which he then licked and sucked. 
Appellant’s contact with complainant’s breast was a fifth sexual encounter. 
Complainant’s mother, who was in the next room, heard someone say, “Get off me,
I don’t like this” and checked on complainant. Complainant’s mother then saw
appellant hovering over complainant with a blanket over her, and his shorts were in
disarray. Complainant’s mother called appellant’s parents that day so that they could
pick him up and take him home. 
          A sixth sexual episode between appellant and complainant was described by
appellant in his audiotaped statements. According to appellant, when he was on the
floor, complainant sat on his face causing him to “accidentally” lick her privates
because she was clothed only in a dress with no panties. Appellant said that he stood
up and went near the couch to attempt to distance himself from her. Appellant
described a seventh sexual encounter with complainant that occurred after he moved
away from complainant. According to appellant’s audiotaped statement, complainant
jumped on top of him again, causing him to fall back to the floor, and she got back
on top of his face again, which caused him to “accidentally” lick her private parts
again. Also according to appellant’s audiotaped statement, an eighth sexual contact
between complainant and appellant occurred when complainant touched his penis
with her hand that she had put down his pants while they were outside of the house. 
A ninth sexual encounter was described by complainant, both at trial and on the
videotape, when she stated that appellant “licked” her “pee-pee” when they were in
her brother’s room.
          After appellant left complainant’s home, complainant told her mother that she
was a “bad girl,” that appellant had given her a “tongue bath” “in her pee-pee area,”
that appellant “touched his pee-pee area to her pee-pee area,” that appellant touched
“his pee-pee area to her butt area,” and that he “licked her on her chest area.” 
Complainant’s mother took her for an examination at a clinic, which revealed that,
other than redness and irritation to her hymen that could be treated with Sitz baths,
complainant’s examination was normal.
          After reporting to her mother what appellant had done to her, complainant
relayed the information to a police officer and a forensic investigator that specializes
in child interviews. The investigator’s interview was videotaped. On the videotape,
which was later admitted into evidence by agreement of the parties, complainant
stated that while they were on a bed, appellant licked her genital and anal areas, and
he, on two occasions, penetrated her female sexual organ with his sexual organ. 
Complainant also stated that appellant made her touch his male sexual organ with her
hand. 
          After appellant’s arrest, when he could not reach his parents, he called their
neighbor David Shumate for assistance in locating them. Appellant told Shumate that
he was in jail because he “was in the bedroom sleeping with the girl. [sic] And that
he had turned over and his penis had accidentally touched the child.” Appellant later
admitted to Shumate that he had sex with the girl. 
          On August 9, 2002, appellant was interviewed twice by a police officer and
those interviews were recorded on audiotapes that were later admitted at appellant’s
trial. During the interviews, appellant waived his statutory rights and spoke to the
officer, admitting the conduct described more fully above. 
          At trial, complainant testified that when she was in her bedroom sleeping,
appellant kissed her on the mouth and touched the “inside” of her “pee-pee area” with
his “pee-pee area,” which hurt her. Complainant also stated that appellant touched
“in my butt” with “his pee-pee,” which also hurt her. Complainant further stated that
appellant also “licked” her “pee-pee” when he was in her room and also again when
he was in her brother’s room. Complainant stated further that appellant “licked” her
“butt.” When asked how many times appellant had touched her, complainant stated
three times at night and “the same thing” “four times at day.”  Spousal Status of Complainant 
          In his first issue, appellant contends that the evidence concerning all of his
convictions is legally insufficient to show that there was no spousal relationship
between him and the complainant. 
          In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness’s
testimony. Id. Circumstantial evidence may be used to prove an essential element
of an offense. Wilson v. State, 654 S.W.2d 465, 467 (Tex. Crim. App. 1983). In a
sexual assault of a child or indecency with a child case, the State must prove that the
complainant was not the spouse of the defendant. See Tex. Pen. Code Ann. §§
21.11, 22.021(a)(1)(B).
          The record shows that complainant was six years old at the time of trial, and
lived with her mother, two brothers and a sister. The complainant’s mother testified
that she knew appellant through a friend of hers, allowed him to live with her family
because he had “nowhere else to go,” and that, before the assaults, complainant
thought of appellant as a big brother. The circumstantial evidence therefore shows
that appellant and complainant knew each other because he was an acquaintance of
complainant’s mother. We conclude that the evidence is legally sufficient to establish
that appellant was not the spouse of the six-year-old complainant. 
          We overrule appellant’s first issue.
Double Jeopardy
          In his second issue, appellant asserts that three of the seven convictions
violated his Fifth Amendment right against double jeopardy because (1) counts one
and three are the same offense, (2) count five is the lesser included offense of counts
one and three, and (3) count six is a lesser included offense of count two. Appellant
requests that we reform the judgment to vacate the convictions for counts three, five
and six only.
          The State contends that appellant has waived the right to complain on appeal
about double jeopardy, as asserted in appellant’s second issue, because he never
objected to the charge at trial or asserted any double jeopardy complaint prior to this
appeal. However, “because of the fundamental nature of double jeopardy protections,
a double jeopardy claim may be raised for the first time on appeal . . . when the
undisputed facts show” that any double jeopardy violation would be clearly apparent
from the record. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). 
Specifically, a defendant may raise a double jeopardy claim for the first time on
appeal when no further proceedings are required to “expand the record with new
evidence” and the claim can be resolved “on the basis of the existing record.” Id. at
644 (citing United States v. Broce, 488 U.S. 563, 575, 109 S. Ct. 757, 763–66 (1989);
Menna v. New York, 423 U.S. 61, 63, 96 S. Ct. 241, 242 (1975)). 
          We conclude that any double jeopardy violation in this case would be apparent
from the record, i.e., the indictments and the evidence presented at trial. We further
conclude that no further proceedings are required to determine whether appellant’s
Fifth Amendment rights against double jeopardy were violated. We thus address the
merits of appellant’s double jeopardy complaint.
          Double jeopardy is the principle that a person shall not be “subject for the same
offense to be twice put in jeopardy of life or limb.” U.S. Const. amend. V. The
Texas Constitution provides similarly: “No person, for the same offense, shall be
twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for
the same offense, after a verdict of not guilty in a court of competent jurisdiction.” 
Tex. Const. art. I, § 14. These prohibitions protect against (1) a second prosecution
for the same offense after acquittal; (2) a second prosecution for the same offense
after conviction; and (3) multiple punishments for the same offense. Ex parte
Kopecky, 821 S.W.2d 957, 958 (Tex. Crim. App. 1992); Ex parte Herron, 790 S.W.2d
623, 624 (Tex. Crim. App. 1990). When a defendant is subjected to a single trial,
only the third aspect of the protection against multiple punishments is involved. 
Herron, 790 S.W.2d at 624 (Tex. Crim. App. 1990). 
          For double jeopardy purposes, “[t]he same offense means the identical criminal
act, not the same offense by name.” Luna v. State, 493 S.W.2d 854, 855 (Tex. Crim.
App. 1973) (holding that sales of heroin three months apart were not one offense); see
Ex parte Goodbread, 967 S.W.2d 859, 860–61 (Tex. Crim. App. 1998) (holding that
15 separate sexual offenses committed between June 10, 1990 and April 1, 1994 were
not one offense). In Luna, the Court of Criminal Appeals commented on the
possibility that, although two offenses could appear to be covered by a single charge,
they could still be two entirely separate offenses. 493 S.W.2d at 855. In declaring
that “[t]he same offense means the identical criminal act, not the same offense by
name,” the Luna Court gave the following example: 
To illustrate, there might be two cases against A for assault
to murder on B with a pistol on the same alleged date, and
a judgment of conviction or acquittal occur in one case. 
On the face of the pleadings and judgment a plea of former
conviction or acquittal would appear good, and yet A may
have tried to kill B on two different occasions on the same
day. 

Id. at 855 (citation omitted). The Court of Criminal Appeals held in Luna that, when
one cannot determine from the State’s pleadings whether the offenses prosecuted are
the same, the court must look to the proof offered at trial. Id.
          A defendant is guilty of aggravated sexual assault of a child if the evidence
shows that he intentionally or knowingly caused his sexual organ or his mouth to
contact or penetrate the female sexual organ of the complainant. Tex. Pen. Code
Ann. § 22.021(a)(1)(B). A defendant is guilty of indecency with a child if the
evidence shows that he engages in sexual contact with the child or causes the child
to engage in sexual contact by touching, including touching through clothing, the
anus, breast, or any part of the genitals of a child. Tex. Pen. Code Ann. § 21.11. As
long as an offense occurred at any time within the statute of limitations, the State
need not prove the actual date of the offense. Garcia v. State, 981 S.W.2d 683, 686
(Tex. Crim. App. 1998) (holding that (1) time is not material element of offense, (2)
primary purpose of specifying date in indictment is not to notify accused of date of
offense but rather to show prosecution not barred by statute of limitations, and (3) it
may be impossible for State to know precisely when charged offense occurred).
          The record demonstrates facts to establish at least four aggravated sexual
assaults, as follows:•Appellant admitted in his audiotaped statement that the first
sexual contact with complainant consisted of him penetrating her
sexual organ with his sexual organ while they lay in bed together
in her bedroom.
 
•Appellant admitted in his audiotaped statement that the second
sexual contact with complainant consisted of his erect penis
“accidentally” touching complainant’s female sexual organ as
they lay in her bed together the day after their first sexual
encounter.
 
•Complainant stated in her videotaped statement that appellant
penetrated her female sexual organ with his sexual organ while
they were on the couch.
 
•Appellant admitted in his audiotaped statement that, when he was
on the floor, complainant twice sat on his face causing him to
“accidentally” lick her privates and penetrate her female sexual
organ with his tongue during the second episode. Complainant
also told her mother that appellant had given her a “tongue bath”
“in her pee-pee area.”

          Excluding the evidence that pertains to the aggravated sexual assaults
described above, the record also demonstrates facts to establish at least three
indecency with a child offenses, as follows:
          •        At trial, and on the videotape of complainant that was admitted into
evidence at appellant’s trial, complainant stated that appellant “licked”
her “pee-pee” when he was in her bedroom.
 
• At trial, and on the videotape of complainant that was admitted
into evidence at appellant’s trial, complainant stated that
appellant “licked” her “pee-pee” when he was in her brother’s
room.
 
•During their time together on the couch, according to appellant,
complainant put her breast in his mouth, which he then licked and
sucked.

          The record therefore demonstrates at least four separate aggravated sexual
assault convictions that contained evidence apart from each other and apart from the
three indecency with a child convictions.
          We therefore conclude that because each of the seven convictions were
premised on evidence of seven separate and distinct sexual acts, no violation of the
double jeopardy clause occurred. See Luna, 493 S.W.2d at 855.
          We overrule appellant’s second issue. 
CONCLUSION
          We affirm the judgment of the trial court for each of appellant’s convictions in
counts one through seven of the indictment.
 
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).