Opinion issued September 16, 2004












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00599-CR




MARVIN P. BOND, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 923657




O P I N I O N
           Appellant, Marvin Bond, appeals the trial court’s denial of relief on his pretrial
application for a writ of habeas corpus seeking relief from double jeopardy. We affirm. 
BACKGROUND
           Appellant was indicted for the felony offense of driving while intoxicated. On July
29, 2002, which was the fourth day of his jury trial, appellant’s counsel, Anthony Fisch,
informed the trial court that the next witness needed an interpreter. After first claiming that
he had previously asked the court for an interpreter, Fisch admitted that he had not, and the
court told Fisch to find one. The court then informed all parties that they were to be prepared
the following day to proceed with the punishment phase of the trial and to have all necessary
witnesses present in the event that the jury’s deliberations on guilt-innocence concluded
quickly. The court announced that court would begin the next day at 8:00 a.m. 
           Fisch did not show up at court on July 30. At about 10:00 a.m., Mr. Sattlewhite from
Fisch’s office appeared at court and stated that Fisch had called him at 6:30 a.m. and had said
he was extremely ill, but that Fisch had not asked him to inform the court of the illness. The
court issued a writ of attachment and a show-cause order for Fisch, and two deputies


 found
Fisch’s home address and went there to serve the writ at about noon. They spoke to Fisch’s
wife, who said that Fisch was not at home. 
           The court coordinator testified that, while the deputies were at Fisch’s house, Fisch
called her and told her that he was sick, that he was at a “colonic place,” and that he had a
doctor’s appointment at about 3:40 that afternoon. Fisch would not tell her the name of the
doctor he was intending to see. Fisch said that the deputies were at his house, that his wife
and children were crying, and that they (the court personnel) were “a bunch of Natzis.” The
coordinator asked Fisch why, if he could drive around to other places, he could not come to
court. He responded that he was sick and was not going to come there. The assistant district
attorney noted, on the record, that the witness who, according to Fisch, was scheduled to
testify on that day had not shown up at the court. 
           In response to the trial court’s questions, appellant stated that he had not had any
contact with Fisch, he had tried to contact Fisch and had left messages for him, he had left
the court’s telephone number as well as his own cell phone number on Fisch’s answering
machine and had asked Fisch to contact him, and he had not heard from Fisch. 
           One of the deputies testified that he was at Fisch’s home from 1:00 p.m. until 2:15
p.m. in an attempt to serve the writ of attachment and show-cause order. During that time,
he spoke to Fisch on the telephone, and Fisch said he would be at his house in about 10
minutes. The deputy spoke to Fisch two or three times between 1:00 o’clock and 2:15, and
Fisch promised to come to his house, but never did. 
           When court resumed on July 31, Fisch did not appear, but he was represented by Mr.
Mitcham, who said he understood that Fisch was still ill. Mitcham offered faxed copies of
a letter from a doctor and some medical records, which he acknowledged were difficult to
read. The court did not admit these documents into evidence because they were not
authenticated. 
           Appellant told the trial court that he had talked to Fisch for about three minutes the
previous evening. They did not talk about the case, but Fisch asked whether the court had
said anything in front of the jury and whether the court was upset. Appellant said that Fisch
complained that “they” were harassing his family. The court explained to appellant that it
could not remove Fisch as counsel because appellant had retained Fisch, but that the court
could appoint an attorney to explain appellant’s options to him under the circumstances. 
Appellant said he would like to do that, and the court appointed an attorney, Ms. Miller, for
appellant for the sole purpose of advising appellant as he decided how he wanted to proceed. 
           After a recess, the court stated several options that were available to appellant,
including the option of sending the jury home and asking them to return the next day, when
it could be determined whether Fisch would appear. Because appellant had had only one
three-minute conversation with Fisch since the time that Fisch had claimed to be ill, and that
conversation, according to appellant, did not include anything about the case or any advice
about how to proceed, the court said, “It appears to this Court that he has abandoned you as
a client.” When asked what he wanted to do, appellant said, “Well, I can’t proceed with him. 
I don’t want to proceed with him. I don’t think I can get a fair trial. The jury probably
knows by now. If they don’t, they have some kind of idea. So I have nothing else to do.” 
Appellant also told the court about a previous instance in which appellant had flown to
Houston from Seattle, Washington for a court appearance and Fisch did not appear, claiming
to be ill. This caused appellant to incur additional expenses because he had to change his
return ticket so that he could be in court the following day. The following then occurred:
THE COURT:All right. . . . I just want to make doubly sure. 
You are requesting me to declare a mistrial. Ms. Miller has explained to you
what a mistrial is . . . . Do you understand what that means?
 
[APPELLANT]:Yes, Ma’am.
 
THE COURT:Then I’ll allow you to fire Mr. Fisch. Is that what
you want? 
 
[APPELLANT]:Yes, ma’am.
 
. . . .
 
THE COURT:I don’t want to put words in your mouth. I want
you to tell me what you want.
 
[APPELLANT]:I cannot continue with him. I can’t use him as a
lawyer. 
 
THE COURT:What do you want me to do with this jury?
 
[APPELLANT]:I don’t believe they can be fair toward me or
anybody in my situation as it stands right now. 
 
THE COURT:Are you requesting to declare a mistrial? 
 
[APPELLANT]:Yes, ma’am. 
 
           The court then found that the mistrial was not due to any act of the prosecution, but
was based solely on the conduct of Fisch, who had abandoned appellant as a client. The
court observed that the jury was angry and concluded that there was no way to know how that
might affect the trial. Because appellant had been laid off from his job and had spent his
savings to hire Fisch, the court appointed Ms. Miller to represent appellant in the DWI case. 
           Approximately one month later, appellant filed a pretrial application for writ of habeas
corpus seeking relief from double jeopardy. Appellant contended that the mistrial was
caused by the intentional and/or reckless conduct of the court by coercion, duress, and
intimidation. Appellant argued that a second prosecution of the cause would constitute
double jeopardy under the Fifth and Fourteenth Amendments of the United States
Constitution. 
           The court issued the writ of habeas corpus and held a hearing on the matter. At the
hearing, Fisch testified that, on the sixth day of appellant’s trial, Fisch woke up feeling
nauseated, throwing up, and having cold sweats. He said that he went to the emergency room
of a hospital and also went to a doctor. He stated that he was unable to attend the trial that
day or the next and that he learned that a mistrial had been declared while he was ill. He also
testified that he was still the attorney of record on the case. 
           The trial court asked appellant whom he had wanted to be his attorney in the trial, and
appellant testified that, when Fisch did not show up in the courtroom, he was very confused. 
Appellant said that he did not recall whether he had had any say over whether a mistrial had
been declared. When asked whether he had wanted the impaneled jury to continue on his
case, he said he could not answer that and had been “really confused.” He then agreed, in
response to questions by the court, that he would have been happy to continue with Fisch and
had wanted the same jury to continue to the conclusion of the case. Under cross-examination, appellant clarified that he thought that, if the events leading up to the mistrial
had not happened, he could have got a fair trial. The court denied the requested relief. 
DISCUSSION
           In his sole issue, appellant contends that the trial court erred in denying the requested
habeas corpus relief because double jeopardy bars a retrial of his case. Appellant argues that
jeopardy attached when the jury was impaneled, and that he did not effectively consent to the
mistrial because he was not represented by counsel at the time he consented. 

Standard of Review
           A trial court’s ruling in a habeas corpus proceeding should not be overturned absent
a clear abuse of discretion. Ex parte Ayers, 921 S.W.2d 438, 440 (Tex. App.—Houston [1st
Dist.] 1996, no pet.). A trial court abuses its discretion when it acts without reference to any
guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990). In determining whether a court has abused its discretion, we view the evidence in the
light most favorable to the trial court’s ruling. Crow v. State, 968 S.W.2d 480, 482 (Tex.
App.—Houston [1st Dist] 1998, pet. ref’d). 
Double Jeopardy
           The Fifth Amendment of the United States Constitution prohibits the State from
putting a person in jeopardy twice for the same offense. U.S. Const. amend V. In a jury
trial, jeopardy attaches when the jury is impaneled and sworn. Crist v. Bretz, 437 U.S. 28,
47, 98 S. Ct. 28249, 2855-56 (1993); Ex parte Herron, 790 S.W.2d 623, 624 (Tex. Crim.
App. 1990). An exception to this rule exists if the defendant consents to a retrial or if a
retrial is mandated by manifest necessity. Arizona v. Washington, 434 U.S. 497, 505, 98 S.
Ct. 824, 830 (1978); Ex parte Little, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994). Manifest
necessity is not an issue in this case because appellant requested a mistrial. Therefore, we
must determine whether, in spite of his request, appellant did not give his effective consent
to the mistrial. 
           Appellant’s contention that he was not represented at the time he requested a mistrial
is not supported by the record. The record reflects that the trial court appointed counsel to
advise appellant regarding the effect of a mistrial and the options available to appellant. The
trial court asked appellant on the record whether counsel had explained that a mistrial meant
that the jurors would be excused and the case would start over as if there had been no trial. 
Appellant responded, “Yes, ma’am.” Thus, the record establishes that appellant was
represented by counsel at the time he requested the mistrial. 
           Appellant contends that the trial court “provoked and prodded” appellant into
requesting a mistrial and that the trial court created “a coercive and threatening
environment.”


 Appellate counsel has again misrepresented the record. The trial court
scrupulously honored appellant’s right to counsel and to be informed of what was occurring. 
Trial counsel’s conduct showed an egregious disregard for the welfare of his client. 
Furthermore, appellate counsel’s characterization of the trial court, including “despotic” and
“erratic and irrational,” is offensive to this Court.


 We conclude that the trial court did not
abuse its discretion in denying appellant’s requested relief.
           We affirm the ruling of the trial court.
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Nuchia, Hanks, and Higley.

Publish. Tex. R. App. P. 47.2(b).