Kristy R. Garrison v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-04-450-CR 

       2-04-451-CR

KRISTY R. GARRISON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

The primary issue we address in these appeals concerns whether evidence discovered by Fire Investigator Timothy Hardeman during his cause and origin investigation of a fire at Appellant Kristy R. Garrison’s residence should have been suppressed.  The evidence Hardeman discovered led to the issuance of a search warrant for Garrison’s residence and to the discovery of additional evidence; Garrison subsequently pleaded guilty to manufacture of a controlled substance of 400 grams or more (methamphetamine) and to possession or transport of certain chemicals with intent to manufacture a controlled substance (methamphetamine).  The trial court placed Garrison on deferred adjudication community supervision for a period of ten years for the manufacturing offense and sentenced her to five years’ confinement for the possession offense.  Because we hold that Hardeman’s warrantless entry into Garrison’s residence at the tail end of the fire-fighting efforts and while the fire department remained in control of the premises was reasonable and falls within a recognized exception to the Fourth Amendment’s protections, we hold that the trial court did not abuse its discretion by denying Garrison’s motion to suppress
.  See Michigan v. Clifford, 
464 U.S. 287, 291-95, 104 S. Ct. 641, 646-47 (1984); 
Michigan v. Tyler
, 436 U.S. 499, 509-10, 98 S. Ct. 1942, 1950 (1978).  We will affirm.

II.  Factual Background

A one-alarm fire occurred at Garrison’s residence on March 25, 2003.  The fire department responded; firefighters eventually extinguished the blaze.  Investigator Hardeman was dispatched to the scene to investigate the cause and origin of the fire.  Investigator Hardeman arrived at the residence and the fire department incident commander advised him that the main body of the fire had been extinguished, but the fire department was still on the scene and in control of the premises. 
 Investigator Hardeman spoke with Garrison, who identified herself as an occupant of the burned house. 
 
Investigator Hardeman told Garrison that he was going to enter the residence to conduct a cause and origin investigation. 

The residence was a one-story, wood frame house with a covered patio/carport in the back. 
 
Investigator Hardeman discovered several one gallon cans of acetone on the patio/carport.  A full-size van was parked six to eight feet from the house, and a small, detached metal storage shed was located east of the van.  Investigator Hardeman observed numerous extension cords running throughout the house and learned that a gas generator was being used to provide electricity to the residence.  He followed the extension cords to the rear portion of the house and discovered the remains of a gas generator located against the back wall of a “lean-to” type shed attached to the house.  The rear wall of the shed had burned away, and Investigator Hardeman ultimately determined that the generator was the cause, or “heat source,” of the fire. Additional extension cords extended out into the yard; one orange extension cord was draped over the van parked near the house and extended into the detached metal shed.  Investigator Hardeman followed this cord to the shed and saw that the shed doors were open about four inches.  The extension cord was attached to another cord which was, in turn,  plugged into a six-outlet power strip.  Investigator Hardeman could not see if anything else was plugged into the power strip, so he opened the doors to the shed and observed what he believed to be a methamphetamine lab.  Investigator Hardeman notified the incident commander of his discovery and requested further support from patrol officers and the narcotics unit.  Officers later acquired a warrant to search the residence based entirely on Investigator Hardeman’s findings. 

Investigator Hardeman was the only witness to testify during Garrison’s motion to suppress hearing.  In addition to other findings, the trial court made the following findings of fact:

2.  In the process of extinguishing the fire, members of the Fire Department located various items that were being used to apparently manufacture a controlled substance.  The Fort Worth Police Department was notified to respond to the location by the Fort Worth Fire Department.

. . . .

4.  A search warrant for the residence was properly obtained and, pursuant to the warrant, the officers began searching the residence.

The trial court concluded that “[t]he discovery of the items by the Fort Worth Fire Department was done by exigent circumstances pursuant to their response to the fire at the residence.”  The trial court ultimately denied Garrison’s motion to suppress evidence, and she entered an open plea of guilty to both offenses.

III.  Motion to Suppress

In her first point, Garrison argues that the trial court abused its discretion by denying her motion to suppress evidence because “(1) the fire had been extinguished and the exigency had expired with it so that a search warrant was required” and (2) Investigator Hardeman’s entry into the detached metal shed occurred after the cause and origin of the fire had been determined, thus requiring a search warrant because the shed’s contents were not in plain view and he did not have Garrison’s consent to make the entry. 

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.  We will uphold the trial court’s ruling if it is reasonably supported by the record and correct under any applicable theory of law.  
State v. Steelman
, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

B.  The Law Concerning Warrantless Entries onto Fire-Damaged Property

Generally, except in carefully defined classes of cases, the nonconsensual entry and search of property is governed by the warrant requirement of the Fourth and Fourteenth Amendments.  
Michigan v. Clifford, 
464 U.S. at 291-92, 104 S. Ct. at 646.  This general rule applies equally to fire-damaged property—unless the fire is so devastating that no reasonable privacy interests remain in the ash and ruins—absent consent or some exigent circumstances.  
See id. 
 A burning building creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. 
 Id.
 at 293, 104 S. Ct. at 646.  Once such an entry is made, officials do not need a warrant to remain for a reasonable time to investigate the cause of the blaze after it has been extinguished.  
Id.
 (citing 
Michigan v. Tyler
, 436 U.S. at 510, 98 S. Ct. at 1950)).  When the fire has been extinguished and fire and police officials have left the scene, re-entry requires either a warrant or the identification of some new exigency.  
Id.
 at 293, 104 S. Ct. at 647.

C.  Application to the Present Facts 

The State argues at the outset that Garrison lacks standing to complain about the search of the detached storage shed because she had no reasonable expectation of privacy in the shed.  Privacy interests are especially strong in a private residence.  
Id.
 at 296, 104 S. Ct. at 648.  This privacy interest extends to a storage shed located within the curtilage of a residence; entry into such a shed implicates privacy rights concerning personal property within the shed and may instigate a potentially violent response from a resident or owner of the property.  
See, e.g., Garza v. State
, 632 N.W.2d 633, 639 (Minn. 2001) (recognizing resident’s privacy interest in detached storage shed); 
Ingram v. State
, 703 P.2d 415, 429 (Alaska 1985) (same); 
see also Buchanan v. State
, 129 S.W.3d 767, 774 n.1 (Tex. App.—Amarillo 2004, pet. ref’d) (recognizing expectation of privacy in home extends to curtilage surrounding home and citing 
Oliver v. United States
, 466 U.S. 170, 182 n.12, 104 S. Ct. 1735, 1743 n.12 (1984)).  Because Garrison was an occupant of the residence, we hold that Garrison possessed a reasonable expectation of privacy in the detached storage shed and that, consequently, she possessed standing to challenge Investigator Hardeman’s warrantless entry into the shed.

Turning to Garrison’s arguments, she first argues that Investigator Hardeman was required to obtain a warrant to investigate at her residence because the fire had been extinguished and the “exigency had expired.”  Investigator Hardeman began his investigation just after firemen extinguished the main body of the fire.  Some “smoldering” was still occurring.  Fire department personnel were still at the scene.  The United States Supreme Court in both 
Michigan v. Clifford 
and 
Michigan v. Tyler 
held that cause and origin investigations in the immediate aftermath of a fire fall within the exigent circumstances exception to the warrant requirement.  
See Michigan v. Clifford
, 464 U.S. at 293, 104 S. Ct. at 647 (holding warrant requirement does not apply to cause and origin investigation conducted in immediate aftermath of fire); 
Michigan v. Tyler
, 436 U.S. at 510, 98 S. Ct. at 1950 (holding officials need no warrant to remain to determine cause and origin of fire).  Because Investigator Hardeman conducted a cause and origin investigation in the immediate aftermath of the fire, he did not need a warrant.

Garrison next argues that Investigator Hardeman needed a warrant to enter the metal shed because the cause of the fire had already been determined.  This argument would be more persuasive had Investigator Hardeman not observed the orange extension cord running from the generator out through the yard to the shed.  Although Investigator Hardeman testified that the “heat source,” for the fire—the fire’s 
origin
—was the gas powered generator, he said that he saw the orange extension cord snaking out to the shed and that he entered the metal shed in the process of and in furtherance of his efforts to determine the 
cause
 of the fire. 

[Prosecutor:] And, Investigator Hardeman, why were you trying to search and find the -- where the power cords snaked to or trying to follow the power cords from what you determined to be the gas generator, the origin of the heat source?

[Hardeman:] It was -- as part of the investigation, my fire investigation, I’m trying to determine what caused this fire.  With an electric generator, it’s required to provide electricity.  I was trying to determine what was being required of this generator.  Was it being overloaded?  What caused it to malfunction, if it did malfunction, to cause this fire?

[Prosecutor:] And is that normal protocol for you when you determine -- in this type of situation?

[Hardeman:] Yes, it is.

Because Investigator Hardeman saw the extension cord running from the generator to the shed and entered the shed in furtherance of his investigation into the cause of the fire, his entry did not require a warrant.  
See Michigan v. Tyler
, 436 U.S. at 510, 98 S. Ct. at 1950.  If officers are permitted to conduct a warrantless cause and origin search of a home in the immediate aftermath of a fire, they are equally entitled to conduct a warrantless cause and origin search of a detached storage shed when it reasonably appears related to the cause or origin of the fire.  
See id.

Garrison also contends that Investigator Hardeman could not enter the shed without a warrant because there was never any fire in the shed.  Again, this argument would be more persuasive if Investigator Hardeman had not observed the orange extension cord running from the generator to the shed.  It was this extension cord, linked to the point of the origin of the fire, that made Investigator Hardeman suspect that something in the shed may have caused the generator to overload or malfunction.  Because Investigator Hardeman was authorized to search areas where the cause of the fire would likely be found, he was—in light of the orange extension cord—authorized to search the shed.  
See
 
Michigan v. Clifford
, 464 U.S. at 295 n.6, 104 S. Ct. at 647 n.6 (“In searching solely to ascertain the cause [of the fire], firemen customarily must . . . search other areas where the cause of fires are likely to be found.  An object that comes into view during such a search may be preserved without a warrant.”) Because Investigator Hardeman discovered the methamphetamine lab and contraband in plain view inside the shed, this evidence was properly used to establish probable cause to obtain the search warrant.  
See id
. at 294, 104 S. Ct. at 647.

We hold that the trial court did not abuse its discretion by determining that Investigator Hardeman’s cause and origin investigation fell within the exigent circumstances exception to the warrant requirement or by denying Garrison’s motion to suppress.  
See Carmouche
, 10 S.W.3d at 327.  We overrule Garrison’s first point.

IV.  Motion To Dismiss—Collateral Estoppel

Federal charges were filed against Garrison allegedly arising out of the same series of events giving rise to her prosecution in this case.  Eventually, in the federal case, the United States filed a motion to dismiss the indictment against Garrison, and it was granted.  Garrison then filed a motion to dismiss her state court indictment in this case.  She attached to her motion a 
copy of the federal motion to dismiss and the order granting dismissal.  She argued that the dismissal of the federal charges collaterally estopped her subsequent prosecution in state court.  

The doctrine of collateral estoppel, also known as issue preclusion, generally prohibits relitigation between the same parties of an issue of ultimate fact that has already been determined by a valid and final judgment.  
See Ashe v. Swenson
, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194 (1970).  Unsuccessful criminal prosecution by the federal government, however, typically does not collaterally estop the State from prosecuting an individual based on the same conduct even if the elements of the state and federal offenses are identical.  
See
 
United States v. Angleton
, 314 F.3d 767, 771 (5th Cir. 2002), 
cert. denied
, 538 U.S. 946 (2003).  Similarly, the State may prosecute a defendant for the same conduct underlying a previous prosecution in federal court.  
See Reynolds v. State
, 548 S.W.2d 733, 735 (Tex. Crim. App. 1977).  This is so because “[w]hen a defendant in a single act violates the ‘peace and dignity’ of two sovereigns by breaking the laws of each, he has committed two distinct ‘offenses.’”  
Heath v. Alabama
, 474 U.S. 82, 88, 106 S. Ct. 433, 437 (1985).  The United States and the State of Texas are separate sovereigns; they are not the same parties for purposes of collateral estoppel.  
See Ashe
, 397 U.S. at 443, 90 S. Ct. at 1194; 
Angleton
, 314 F.3d at 776.
(footnote: 1)  
Accordingly, because Garrison failed to establish the first element of her collateral estoppel claim—that there was a full hearing at which 
both parties 
had an opportunity to litigate the relevant fact issue—the trial court did not err by implicitly denying Garrison’s motion to dismiss.  
See State v. Aguilar, 
947 S.W.2d 257, 259-60 (Tex. Crim. App. 1997); 
see also Kappmeyer v. State
, 127 S.W.3d 178, 181-83 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding State not collaterally estopped from prosecuting defendant because United States and State of Texas are separate sovereigns).  We overrule Garrison’s second point.
(footnote: 2)

V.  Sufficiency Of Fact Findings & Conclusions of Law

In her third point, Garrison argues that the evidence is insufficient to support the findings of fact made by the trial court after the suppression hearing.  Our review of the trial court’s findings of fact, however, is limited by the applicable standard of review.  As stated above, we do not engage in our own factual review.  
Best
, 118 S.W.3d at 861.  
We give almost total deference to the trial court’s ruling on questions of historical fact.  
Id
.
 at 861-62.  The testimony and evidence recited above support the trial court’s findings of fact; thus, we decline to disturb them.  
See Romero
, 800 S.W.2d at 543. We overrule Garrison’s third point.

VI.  Double Jeopardy

In her fourth point, Garrison argues that her conviction for manufacture of a controlled substance and for possession or transport of certain chemicals with intent to manufacture a controlled substance violate the prohibition against double jeopardy because possession of acetone with intent to manufacture a controlled substance (methamphetamine) “is in truth and fact part and parcel of the greater offense” (manufacture of methamphetamine).  The State argues that Garrison has forfeited this argument by failing to raise it in the trial court. 
The double jeopardy clause of the Fifth Amendment to the United Stats Constitution provides that no person shall “be subject for the same offense to be twice put in jeopardy of life or limb.”  
U.S. Const
. amend. V.  Article I, Section 14 of the Texas Constitution contains a similar provision and is conceptually identical to its federal counterpart.  
Stephens v. State
, 806 S.W.2d 812, 814-15 (Tex. Crim. App. 1990).  The guarantee against double jeopardy consists of three separate constitutional protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the “same offense.”  
Illinois v. Vitale
, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264 (1980); 
Lopez v. State
, 108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003).  Garrison’s double jeopardy claim implicates the third, multiple punishments category.  
See Ex parte Herron
, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh’g).
(footnote: 3)
 Garrison failed to make a request, objection, or motion raising her double jeopardy complaint to the trial court.  Generally, this failure to preserve error would preclude us from considering the alleged error.  
See 
Tex. R. App. P.
 33.1; 
Gonzalez v. State
, 8 S.W.3d 640, 642-43 (Tex. Crim. App. 2000) .  A double jeopardy claim may be raised for the first time on appeal, however, when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) the enforcement of the usual rule of procedural default serves no legitimate State purpose.  
See Gonzalez
, 8 S.W.3d at 643; 
Murray v. State
, 24 S.W.3d 881, 888-89 (Tex. App.—Waco 2000, pet. ref’d).
  Both prongs of this test must be satisfied before an appellate court will consider a multiple-punishments double jeopardy claim that is raised for the first time on appeal.  
See Murray
, 24 S.W.3d at 888-89 (citing 
Gonzalez
).

We first consider whether it is clearly apparent from the face of the record that Garrison’s convictions for manufacture of methamphetamine and 
for possession of acetone with intent to manufacture methamphetamine 
violate the prohibition against double jeopardy.  The threshold question in assessing Garrison’s double jeopardy issue is whether the face of the record demonstrates that she is being punished twice for the "same offense."  
See State v. Perez
, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997). 
 The principal test for determining whether two offenses are the same for the purposes of double jeopardy was set out by the United States Supreme Court in 
Blockburger v. United States
:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).  Greater and lesser included offenses are the "same" offense for double-jeopardy purposes.  
Parrish v. State
, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).

Here, Garrison’s indictment in the manufacturing case alleged that on or about the 26
th
 day of March 2003 she did

then and there intentionally or knowingly manufacture a controlled substance, namely methamphetamine of four hundred grams or more, including any adulterants or dilutants, by producing, preparing, propagating, compounding, converting, or processing said controlled substance, independently by means of chemical synthesis.

See
 
Tex. Health & Safety Code Ann.
 § 481.112 (Vernon 2003).  The indictment in her possession of acetone case alleged that on or about the 26
th
 day of March 2003 she did

with intent to unlawfully manufacture a controlled substance, namely: methamphetamine possess or transport immediate precursor, to-wit: acetone.

See
 
id
.
 § 481.124 (Vernon Supp. 2004-05).  These two offenses, on their face, constitute two separate statutory offenses in that each requires proof of a fact which the other does not.  The manufacturing offense requires proof of the manufacture of over four hundred grams of methamphetamine; the possession charge does not.  The possession charge requires proof of possession of acetone; the manufacturing charge does not.
(footnote: 4)
 Garrison entered an open plea of guilty to both these offenses.  “[
A] defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two 
separate crimes
.”  
United States v. Broce
, 488 U.S. 563, 570, 109 S. Ct. 757, 763 (1989) 
(emphasis added).  Garrison’s plea of guilty thus waived her right to contest the indictments as violative of the prohibition against double jeopardy in a subsequent factual proceeding below, and without such a record, the two indictments and remaining record are insufficient to show a double jeopardy violation.  
See id. 
at 576, 109 S. Ct. at 766.  
Because the indictments describe separate offenses and because Garrison’s double jeopardy argument has the effect of contradicting the indictments
, additional proceedings by which to expand the record would be necessary to address Garrison’s double jeopardy claim in light of her guilty pleas.  On the face of the record, absent additional proceedings, no double jeopardy claim is clearly apparent. 
Compare Saenz v. State
, 131 S.W.3d 43, 50 (Tex. App.—San Antonio 2003, pet. granted) (concluding double jeopardy violation apparent from face of record because all three murders before the same court, all three counts before the trial court, and record fully developed); 
Roy v. State
, 76 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist] 2002, no pet.) (“Appellant stood trial for both offenses and presented a complete record of that trial for our consideration.”).
  We 
hold that Garrison may not raise her unpreserved double jeopardy claim for the first time on appeal because it is not clearly apparent on the face of the record.  
See Gonzalez
, 8 S.W.3d at 643; 
King v. State
, 161 S.W.3d 264, 267-69 (Tex. App.—Texarkana 2005, pet. filed).  We overrule Garrison’s fourth point.

VII.  Conclusion

Having overruled all four of Garrison’s points, we affirm the trial court’s judgments.

SUE WALKER

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 July 7, 2005

FOOTNOTES
1:
The State argued that it is not that same party as the United States at the hearing on Garrison’s motion to suppress and motion to dismiss. 

2:
Because Garrison failed to establish the “same parties” element of her collateral estoppel claim, we need not address the remaining elements of collateral estoppel. 

3:
Garrison argues, “As such the Appellant cannot be punished for both offenses and the latter must be dismissed for violation of the double jeopardy clause prohibition against multiple trials and punishments for the same events.” 

4:
The evidence adduced at the suppression hearing likewise indicates that factually these two offenses are different; the gallons of acetone were found in the house and in the carport while the manufacturing laboratory was found in the detached metal shed.